STATE OF NORTH CAROLINA v. TRACEY HARLAN JARVIS

No. COA11-31

(Filed 2 August 2011)

**1. Satellite-Based Monitoring—clerical error—remanded for correction**

A satellite-based monitoring order was remanded for correction of a clerical error where the transcript of the hearing reflected the judge saying that the conviction (indecent liberties) was not an aggravated offense while the order found that the offense was aggravated.

**2. Satellite-Based Monitoring—subject matter jurisdiction—statutory provisions**

The trial court properly exercised subject matter jurisdiction in ordering satellite-based monitoring (SBM) despite defendant's

STATE v. JARVIS

[214 N.C. App. 84 (2011)]

contention that the State failed to file a written pleading providing notice of the basis for the SBM. The General Assembly has devised a separate procedure for determining eligibility for SBM and clearly granted the superior courts subject matter jurisdiction to conduct these determinations pursuant to specific statutory procedures.

### 3. Satellite-Based Monitoring—notice—no constitutional violation

There was no constitutional due process violation in ordering defendant to enroll in satellite-based monitoring (SBM) without providing notice of the grounds where defendant was placed on probation with a condition that he be incarcerated for 120 days. His eligibility for SBM was determined by N.C.G.S. § 14-208.40A, not N.C.G.S. § 14-208.40b, and neither the Department of Correction nor the trial court was responsible for any type of notice about eligibility for SBM.

### 4. Satellite-Based Monitoring—indecent liberties—physical, mental, or sexual abuse of minor

The trial court did not err when ordering an indecent liberties defendant to submit to satellite-based monitoring by finding that defendant's conviction involved the physical, mental, or sexual abuse of a minor.

### 5. Satellite-Based Monitoring—low risk—highest level of monitoring

The trial court did not err when ordering defendant to submit to satellite-based monitoring by determining that defendant required the highest possible level of supervision and monitoring, even though the risk assessment classified defendant as a low risk for reoffending. However, it was not clear whether the trial court found that defendant's *Alford* plea itself showed a lack of remorse or whether defendant's actions showed a lack of remorse and the case was remanded for additional findings.

### 6. Satellite-Based Monitoring—double jeopardy and cruel and unusual punishment—no violation

There was no violation of defendant's right to be free from double jeopardy and cruel and unusual punishment in ordering that defendant submit to satellite-based monitoring.

Appeal by defendant from judgment entered 16 July 2010 by Judge John L. Holshouser, Jr., in Rowan County Superior Court. Heard in the Court of Appeals 26 May 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Peter A. Regulski, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Andrew DeSimone, for defendant-appellant.*

CALABRIA, Judge.

Tracey Harlan Jarvis ("defendant") appeals the trial court's order requiring him to enroll in satellite-based monitoring ("SBM") for a period of ten years. We vacate and remand the trial court's order.

## I. BACKGROUND

"Cayla" and "Kasey,"[1] defendant's daughter (collectively, "the girls"), were the same age and played softball together.[2] Defendant, a close friend of Cayla's family for more than eight years, was also the girls' softball coach. Cayla's mother would frequently drop her off at defendant's home because of Cayla's relationship with Kasey, and the girls would spend the night together at defendant's home.

During the summer and fall of 2006, Cayla began spending time at defendant's home when Kasey was not present. On 5 January 2007, defendant and Cayla "were just messing around, sitting on the couch watching a movie" when Cayla "reached over and kissed" defendant. Defendant told Cayla that it "wasn't right" and that if there were "physical relations" between them, he would "probably end up in jail."

Approximately one week later, defendant and Cayla were watching a movie at defendant's home when she "kissed him [and] started touching him." Cayla then performed oral sex on defendant. Defendant "stopped her" and told her they "couldn't do that." Cayla replied that she "understood." Approximately one week after this incident, defendant and Cayla were in defendant's bed, fully clothed. Cayla began kissing defendant, "and she took off part of her clothes." Cayla then performed oral sex on him, and defendant did not stop her.

On the afternoon of 6 May 2007, defendant and Cayla were at defendant's home when she performed oral sex on him, and then

---

1. We use pseudonyms to protect the identity of the victim and for ease of reading.

2. The parties do not dispute that Cayla was under the age of sixteen at the time of the offenses. Therefore, we will not identify her age in order to further protect her identity.

engaged in intercourse. The next day, 7 May 2007, Cayla's mother called defendant around noon and told him that an unnamed student at Cayla's school "told them something." The school then called Cayla's mother and told her to come to the school "right away." Defendant assumed the unnamed student was Kasey.

Cayla's mother contacted defendant and asked him if he "had any idea what was going on." Defendant replied in the negative. He subsequently called Cayla's mother several times, but she did not answer. Defendant then spoke to Cayla about turning himself into law enforcement. Cayla told him "not to do it," but defendant "felt like this was the right thing to do."

On 7 May 2007, defendant voluntarily drove to the China Grove Police Department, where he spoke with Detective Linda Porter ("Detective Porter") of the Rowan County Sheriff's Department ("RCSD"). Detective Porter read defendant his *Miranda* rights, and defendant signed a form waiving his rights. He then admitted that he performed oral sex on Cayla "three or four times," that she performed oral sex on him "about eight or more [times]," and that they also engaged in intercourse.

Defendant, who was thirty-nine years old at the time, was indicted on four counts of statutory sex offense of a person at least six years younger than defendant pursuant to N.C. Gen. Stat. § 14-27.7A(a). On 16 July 2010, in Rowan County Superior Court, defendant entered a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), to four counts of taking indecent liberties with a child. The trial court sentenced defendant on each count to a minimum term of thirteen months to a maximum term of sixteen months in the custody of the North Carolina Department of Correction ("NCDOC"), and ordered defendant to serve all sentences consecutively. The trial court then suspended the sentences. Defendant was given a split sentence. He was placed on supervised probation for a period of thirty-six months and, as a special condition of probation, defendant was ordered to serve two consecutive active terms of 120 days in the custody of the NCDOC.

After entering judgment, the trial court determined defendant's eligibility for SBM, including whether defendant's conviction was a reportable conviction. A reportable conviction, as defined by N.C. Gen. Stat. § 14-208.6(4), means "[a] final conviction for an offense against a minor, a sexually violent offense, or an attempt to commit any of those offenses . . . ." The court found that defendant's convic-

tion for taking indecent liberties with a child was a reportable conviction because it was a "sexually violent offense" under N.C. Gen. Stat. § 14-208.6(5). Since defendant was placed on probation, the trial court placed certain mandatory special conditions for sex offenders who have been convicted of a reportable conviction. The trial court ordered that, as part of defendant's special conditions for reportable offenses, defendant had to "abide [by] all conditions of the sex offender control program."

The trial court also found that defendant had not been classified as a sexually violent predator or a recidivist, but determined that defendant's conviction was an aggravated offense under N.C. Gen. Stat. § 14-208.6(1a); that defendant's conviction involved "the physical, mental, or sexual abuse of a minor;" and that, based on the NCDOC's risk assessment and additional findings, defendant required the highest possible level of supervision and monitoring. The trial court then ordered defendant to enroll in SBM for a period of ten years. Defendant appeals.

## II. INITIAL MATTER

[1] As an initial matter, in the trial court's SBM order, the court found that defendant's offense was an "aggravated offense." However, our Court has held that the offense of indecent liberties can never be an aggravated offense. *State v. Davison*, ___ N.C. App. ___, ___, 689 S.E.2d 510, 517 (2009), *disc. review denied*, ___ N.C. ___, 703 S.E.2d 738 (2010). Although defendant does not argue that the trial court erred on this matter, "[w]e note *ex mero motu* that the judgments as entered contain a clerical error." *State v. Barber*, 9 N.C. App. 210, 212, 175 S.E.2d 611, 613 (1970). The transcript of defendant's SBM hearing reflects that the SBM order contained a clerical error:

> THE COURT: And that the conviction is not an aggravated offense.

> [The State]: The State agrees with that.

(emphasis added). "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record 'speak the truth.' " *State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008) (internal quotations and citation omitted). Therefore, we remand this matter to the trial court for correction of this clerical error.

### III. JURISDICTION

**[2]** Defendant argues that the trial court lacked subject matter jurisdiction to order him to enroll in SBM because the State failed to file a written pleading providing notice regarding the basis for SBM, and therefore did not invoke the jurisdiction of the court. We disagree.

In the instant case, defendant did not raise the issue of subject matter jurisdiction before the trial court. "However, a defendant may properly raise this issue at any time, even for the first time on appeal." *State v. Reinhardt*, 183 N.C. App. 291, 292, 644 S.E.2d 26, 27 (2007).

"A trial court must have subject matter jurisdiction over a case in order to act in that case." *Id.* "Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question. [] Subject matter jurisdiction is conferred upon the courts by either the North Carolina Constitution or by statute." *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987) (internal citation omitted).

> Jurisdiction is "[t]he legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it." Black's Law Dictionary 869 (8th ed. 2004). The court must have subject matter jurisdiction, or "[j]urisdiction over the nature of the case and the type of relief sought," in order to decide a case. *Id.* at 870. "A universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity." *Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964).

> The General Assembly "within constitutional limitations, can fix and circumscribe the jurisdiction of the courts of this State." *Bullington v. Angel*, 220 N.C. 18, 20, 16 S.E.2d 411, 412 (1941). "Where jurisdiction is statutory and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations, an act of the Court beyond these limits is in excess of its jurisdiction." *Eudy v. Eudy*, 288 N.C. 71, 75, 215 S.E.2d 782, 785 (1975), *overruled on other grounds by Quick v. Quick*, 305 N.C. 446, 290 S.E.2d 653 (1982).

*State v. Wooten*, 194 N.C. App. 524, 527, 669 S.E.2d 749, 750 (2008).

"The superior court has exclusive, original jurisdiction over all criminal actions not assigned to the district court division by this Article[.]" N.C. Gen. Stat. § 7A-271(a) (2010); *see also State v. Corbett*,

191 N.C. App. 1, 13, 661 S.E.2d 759, 767 (2008) ("[S]uperior courts have exclusive, original jurisdiction over "all criminal actions not assigned to the district court division," including felony criminal actions.") (Elmore, J., dissenting). The North Carolina General Statutes confer power upon the superior court pursuant to N.C. Gen. Stat. § 14-208.40A, which sets out the procedures to be employed by the sentencing court, to categorize those convicted of reportable offenses and to determine eligibility of such newly convicted persons for enrollment in SBM when the trial court imposes a suspended sentence. N.C. Gen. Stat. § 14-208.40A (2010). After an offender has been convicted of a reportable offense as defined by N.C. Gen. Stat. § 14-208.6(4), the State

> shall present to the court any evidence that (i) the offender has been classified as a sexually violent predator pursuant to G.S. 14-208.20, (ii) the offender is a recidivist, (iii) the conviction offense was an aggravated offense, (iv) the conviction offense was a violation of G.S. 14-27.2A or G.S. 14-27.4A, or (v) the offense involved the physical, mental, or sexual abuse of a minor. The district attorney shall have no discretion to withhold any evidence required to be submitted to the court pursuant to this subsection.

N.C. Gen. Stat. § 14-208.40A(a). The defendant then has the opportunity to present evidence to refute the State's evidence.

*Id.*

> After the parties present evidence,

> the court shall determine whether the offender's conviction places the offender in one of the categories described in G.S. 14-208.40(a), and if so, shall make a finding of fact of that determination, specifying whether (i) the offender has been classified as a sexually violent predator pursuant to G.S. 14-208.20, (ii) the offender is a recidivist, (iii) the conviction offense was an aggravated offense, (iv) the conviction offense was a violation of G.S. 14-27.2A or G.S. 14-27.4A, or (v) the offense involved the physical, mental, or sexual abuse of a minor.

N.C. Gen. Stat. § 14-208.40A(b).

> If the court finds that the offender committed an offense that involved the physical, mental, or sexual abuse of a minor, that the offense is not an aggravated offense or a violation of G.S. 14-27.2A or G.S. 14-27.4A and the offender is not a recidivist, the court shall order that the [NCDOC] do a risk assessment of

the offender. The [NCDOC] shall have a minimum of 30 days, but not more than 60 days, to complete the risk assessment of the offender and report the results to the court.

N.C. Gen. Stat. § 14-208.40A(d).

Upon receipt of a risk assessment from the [NCDOC] pursuant to subsection (d) of this section, the court shall determine whether, based on the [NCDOC's] risk assessment, the offender requires the highest possible level of supervision and monitoring. If the court determines that the offender does require the highest possible level of supervision and monitoring, the court shall order the offender to enroll in a satellite-based monitoring program for a period of time to be specified by the court.

N.C. Gen. Stat. § 14-208.40A(e). Therefore, our General Assembly devised a separate procedure for determining eligibility for SBM and clearly granted the Superior Courts subject matter jurisdiction to conduct these determinations pursuant to specific statutory procedures.

In the instant case, the Superior Court had jurisdiction over defendant's *Alford* plea to four felony counts of taking indecent liberties with a minor, pursuant to N.C. Gen. Stat. § 7A-271(a). The trial court then sentenced defendant immediately following the entry of his *Alford* plea. Since defendant received a suspended sentence, the court determined defendant's eligibility for SBM.

The court determined that defendant was convicted of a reportable offense. The State then presented evidence in the form of testimony by Detective Porter and Cayla's mother to show that defendant's offense "involved the physical, mental, or sexual abuse of a minor." N.C. Gen. Stat. § 14-208.40A(a). The State also submitted, without objection, a "STATIC-99," an assessment prepared by the NCDOC which indicated that defendant presented a "low risk for re-offending." Defendant had the opportunity to present evidence to refute the State's evidence, but did not present any evidence. The trial court then determined that defendant's offense "involved the physical, mental, or sexual abuse of a minor." N.C. Gen. Stat. § 14-208.40A(b). The trial court then considered the STATIC-99 and the testimony of the witnesses, determined that defendant required the highest possible level of monitoring, and ordered that defendant be subjected to SBM for a period of ten years. N.C. Gen. Stat. § 14-208.40A(e). These facts show that the trial court properly exercised subject matter jurisdiction pursuant to N.C. Gen. Stat. § 14-208.40A

and followed the proper hearing procedures in assessing defendant's eligibility for SBM. Defendant's issue on appeal is overruled.

## IV. DUE PROCESS

[3] Defendant argues that the trial court erred by ordering him to enroll in SBM without providing any notice of the ground upon which the State sought to subject him to SBM, in violation of his constitutional due process guarantees. We disagree.

In cases where a defendant has been newly convicted of a reportable conviction, placed on probation and, as a condition of probation, was incarcerated, N.C. Gen. Stat. § 14-208.40A applies. N.C. Gen. Stat. § 14-208.40B(b) requires that if an offender falls into one of the categories described in N.C. Gen. Stat. § 14-208.40(a), the NCDOC must provide him notice of the hearing date and the NCDOC's determination with respect to N.C. Gen. Stat. § 14-208.40(a). N.C. Gen. Stat. § 14-208.40B(b) (2010). The notice provisions found in N.C. Gen. Stat. § 14-208.40B(b) are merely notice provisions to protect the due process rights of offenders who are not currently incarcerated. *Wooten*, 194 N.C. App. at 528, 669 S.E.2d at 751. However, the instant case is not governed by N.C. Gen. Stat. § 14-208.40B, but by N.C. Gen. Stat. § 14-208.40A, because defendant was placed on probation and, as a condition of probation, was incarcerated for 120 days.

"According to N.C.G.S. § 14-208.6(5), the offense of taking indecent liberties with a child in violation of N.C.G.S. § 14-202.1 is defined as a 'sexually violent offense,' which is a reportable conviction under N.C.G.S. § 14-208.6(4)." *State v. May*, ___ N.C. App. ___, ___, 700 S.E.2d 42, 44 (2010). When defendant entered an *Alford* plea to four counts of taking indecent liberties with a minor, he was newly convicted of a reportable conviction. The district attorney requested that the trial court consider SBM during the sentencing phase. The trial court was required to make findings regarding whether defendant was eligible for enrollment in SBM. Therefore, N.C. Gen. Stat. § 14-208.40A was the applicable statute for determining defendant's eligibility for enrollment in SBM and the time period of his enrollment.

Since defendant was placed on probation and, as a condition of his probation, was incarcerated for 120 days, his eligibility for SBM was determined by the trial court pursuant to N.C. Gen. Stat. § 14-208.40A, not N.C. Gen. Stat. § 14-208.40B. Therefore, neither the NCDOC nor the trial court was responsible for any type of notice regarding defendant's eligibility.

STATE v. JARVIS

[214 N.C. App. 84 (2011)]

N.C. Gen. Stat. § 14-208.40A requires that an offender convicted of a reportable conviction has the opportunity to be heard during the sentencing phase. After the State presents evidence necessary to prove that the defendant qualifies for SBM enrollment, then the defendant has the opportunity to present evidence to refute the State's evidence. N.C. Gen. Stat. § 14-208.40A(a). Based on the presentation of all the evidence at this hearing, the trial court determines whether defendant's conviction renders him eligible for SBM enrollment, and the period of time for his enrollment. N.C. Gen. Stat. § 14-208.40A(b).

In the instant case, the trial court accepted defendant's *Alford* plea and entered judgment for defendant's convictions for four counts of taking indecent liberties with a child. Pursuant to N.C. Gen. Stat. § 14-208.40A, the trial court sentenced defendant for the convictions and determined the effect of the convictions on his eligibility for SBM. During this portion of the proceeding, the State presented testimony from Detective Porter and Cayla's mother, and heard arguments of counsel. Defendant had the opportunity to present evidence to refute the State's evidence but did not present any evidence. Therefore, the trial court properly followed the procedures in N.C. Gen. Stat. § 14-208.40A, and did not violate defendant's constitutional due process rights. Defendant's issue on appeal is overruled.

## V. ABUSE OF A MINOR

**[4]** Defendant argues that the trial court erred by determining that his conviction for indecent liberties involved the physical, mental, or sexual abuse of a minor because, by its elements, indecent liberties does not require any abuse of a minor. We disagree.

"[S]ince the offense of solicitation to take an indecent liberty with a minor inherently 'involves' the 'physical, mental, or sexual abuse of a minor,' we conclude that the trial court did not err by concluding that [d]efendant was subject to enrollment in SBM pursuant to N.C. Gen. Stat. § 14-208.40(a)(2)." *State v. Cowan*, ___ N.C. App. ___, ___, 700 S.E.2d 239, 247 (2010).[3] Therefore, defendant's issue on appeal is overruled.

---

3. *Cf. State v. Williams*, — N.C. App. —, —, 700 S.E.2d 774, 776 (2010) ("Defendant's conviction [for taking indecent liberties with a child] did not involve abuse of a minor, as that phrase is defined in Article 27A of Chapter 14, such that the trial court should not have found that Defendant's conviction 'did involve the physical, mental, or sexual abuse of a minor.' ").

## VI. LEVEL OF SUPERVISION AND MONITORING

**[5]** Defendant argues that the trial court erred by determining that he required the highest possible level of supervision and monitoring although the NCDOC risk assessment classified him as a low risk for reoffending, and the trial court's additional findings did not support a conclusion that defendant, who had no previous criminal record, was a high risk for reoffending. We agree.

### A. Standard of Review

On appeal from an SBM order, "we review the trial court's findings of fact to determine whether they are supported by competent record evidence, and we review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found."

*State v. Green*, ___ N.C. App. ___, ___, 710 S.E.2d 292, 294 (2011) (quoting *State v. Kilby*, 198 N.C. App. 363, 367, 679 S.E.2d 430, 432 (2009) (citation and internal quotation marks omitted)). "The trial court's 'findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.' " *Kilby*, 198 N.C. App. at 366, 679 S.E.2d at 432 (quoting *State v. Brewington*, 352 N.C. 489, 498, 532 S.E.2d 496, 501 (2000)).

### B. Facts of Defendant's Offenses

Defendant contends that the trial court erred by considering the facts of his offenses when it determined that he required the highest possible level of supervision and monitoring.

"This Court has previously held that a DOC risk assessment of 'moderate,' without more, is insufficient to support the finding that a defendant requires the highest possible level of supervision and monitoring." *Green*, ___ N.C. App. at ___, 710 S.E.2d at 294 (italics omitted) (quoting *Kilby*, 198 N.C. App. at 369-70, 679 S.E.2d at 434). However if the NCDOC determines that a defendant is a "moderate" risk to reoffend, but the trial court determines he requires the highest possible level of supervision and monitoring, the trial court is required to make additional findings based on competent record evidence to support its findings. *Id* at ___, 710 S.E.2d at 294 (citing *State v. Morrow*, 200 N.C. App. 123, 130-34, 683 S.E.2d 754, 760-62 (2009), *aff'd per curiam*, 364 N.C. 424, 700 S.E.2d 224 (2010)). Furthermore, in *Green*, our Court held that "the trial court may properly consider evidence of the factual context of a defendant's conviction[s] when making additional findings as to the level of supervision required of a

defendant convicted of an offense involving the physical, mental, or sexual abuse of a minor." *Id.* at ___, 710 S.E.2d at 295. Therefore, defendant's argument that the trial court improperly considered the facts of his offenses when it concluded that he required the highest level of supervision and monitoring is overruled.

### C. Findings of Fact

In the instant case, the State submitted the "STATIC-99," which indicated that defendant presented a "low risk for re-offending." The State then presented the testimony of Detective Porter and Cayla's mother. (T pp. 22-37) After entering judgment, the trial court made the following additional findings of fact:

1. That the defendant took advantage of his position of trust noting that the victim looked upon him as a father figure.

2. That the defendant took advantage of the victim's vulnerability when at the time the victim had a strained relationship with her father and looked to the defendant for support and comfort.

3. That the court notes the defendant's Alford plea indicated no remorse. That the defendant did not take responsibility for his actions. That by means of Alford plea, the defendant did what was in his best interest.

4. That the offenses occurred when other children were present in the defendant's home.

The testimony of Detective Porter and Cayla's mother was competent evidence to support the trial court's first two findings of fact. However, the State did not present any evidence to support the fourth finding. Therefore, it is unsupported by competent evidence and does not support the trial court's conclusion that defendant "require[d] the highest possible level of supervision and monitoring."

Defendant argues that the trial court punished him for entering an *Alford* plea when it required him to submit to the highest possible level of supervision and monitoring. Since this is an issue of first impression for our Court, we turn to other jurisdictions for guidance.

In *State v. Knight*, the defendant entered an *Alford* plea to charges of one count of third-degree sexual abuse, one count of lascivious acts with a child, and four counts of sexual exploitation of a minor, for his actions with underage teen girls. 701 N.W.2d 83, 84 (Iowa 2005). At the defendant's sentencing hearing, the State intro-

duced evidence of the circumstances surrounding the crimes. *Id.* at 85. At the hearing, the trial court stated:

"And as I listen to [you], your comments indicate one thing and that is a lack of remorse. You have done an excellent job pointing out certain factors which are important to the Court's sentence, but other than your admission of guilt—which is perhaps a sign of remorse. At least you admitted that you were guilty of three offenses. There's no apology. There's no sign of remorse here whatsoever."

*Id.* at 86. The trial court then sentenced the defendant to consecutive terms of incarceration, citing as one of its reasons, "Third, as I've indicated, there has been no remorse shown by you." *Id.*

On appeal, the defendant argued that the trial court used his " '*Alford* plea and refusal to admit guilt or express remorse to enhance his sentence.' " *Id.* The Iowa Supreme Court noted:

It is apparent from the judge's comments that the judge did not know that [the defendant] had entered an *Alford* plea, as the court referenced [his] "admission of guilt" as "perhaps a sign of remorse." (The sentencing judge had not presided at the plea hearing.) In addition, the court commented, "At least you admitted that you were guilty of three offenses." Clearly, the court did not consider the defendant's *Alford* plea or his refusal to admit guilt as a sentencing factor, as the court mistakenly believed the defendant had admitted his guilt earlier when he entered a guilty plea.

We also disagree with the defendant . . . that the sentencing court penalized [him] for not apologizing. In reading the court's comments in their entirety, it is clear the court was concerned with the defendant's lack of remorse and mentioned an apology as simply one way in which the defendant could have expressed remorse.

*Id.* The court then held that "a defendant's lack of remorse may be considered even when the defendant professes his innocence by entry of an *Alford* plea." *Id.* at 89. *See also Smith v. Commonwealth*, 27 Va. App. 357, 363, 499 S.E.2d 11, 14 (1998) ("[A] trial court may consider a defendant's lack of remorse at sentencing, even when the defendant has chosen to enter an *Alford* plea.").

Although an *Alford* plea allows a defendant to plead guilty amid assertions of innocence, it does not require a court to accept those assertions. The sentencing court may, of necessity, con-

sider a broad range of information, including the evidence of the crime, the defendant's criminal history and the demeanor of the defendant, *including the presence or absence of remorse.* Such considerations play an important role in the court's determination of the rehabilitative potential of the defendant.

*State v. Howry*, 127 Idaho 94, 96, 896 P.2d 1002, 1004 (1995) (emphasis added). *See also* Bryan H. Ward, *A Plea Best Not Taken: Why Criminal Defendants Should Avoid the Alford Plea*, 68 MO. L. REV. 913 (2003) (discussing the effects of *Alford* pleas at sentencing). "Persons plead guilty for many reasons—pangs of conscience, *remorse*, desire to get the ordeal over with, a hope for leniency and other innumerable reasons, including a natural and deliberate choice of attempting to avoid a worse fate and to forestall the prosecution of additional charges." *Ford v. United States*, 418 F.2d 855, 859 (8th Cir. 1969) (emphasis added).

In the instant case, at defendant's sentencing hearing, Detective Porter testified as follows:

Q. [the State]. And did you have an opportunity to talk to [defendant]?

A. [Detective Porter]. I did.

Q. When was it that you had an opportunity to talk to the defendant?

A. May the 7th, 2007.

Q. How did it come to be that the two of you were in each other's presence?

A. [He] had gone to the China Grove police department to turn himself in. He said he thought we were looking for him.

Q. Okay. Were you looking for him?

A. We were going to, not right at that minute. We were actually already working on the case, and we were going to get to that. But since he came to us, we just went ahead and went with that.

Q. All right. And why were you looking for the defendant?

A. Because we were investigating him for the sex offense with [Cayla].

Q. Where did you first meet the defendant?

A. China Grove police department.

Q. And do you know how the defendant arrived at the police department?

A. I think he drove his self [sic] there.

Q. He wasn't escorted by law enforcement there?

A. No. He went to turn his self [sic] in.

Q. Do you know what he said to you when you first made contact with him?

A. I have a statement.

Detective Porter then read defendant's statement in open court. On cross-examination, Detective Porter testified as follows:

Q. [Defendant's counsel]. Okay. As far as [defendant] is concerned on sentencing for this matter, he basically drove himself and forced people to talk to him. And this was a man that was remorseful and trying to give a confession; correct?

A. He knew we were looking for him or going to be looking for him, and he turned his self [sic] in. That's correct.

When the court heard arguments from counsel regarding SBM, the State told the court:

Number three, his Alford plea, Your Honor. Despite the fact that he confessed to [Detective] Porter, his attorneys want to stand up and tell you how remorseful he is, he didn't even plead guilty. He pled Alford, that it was in his best interest. It shows lack of remorse, despite what his attorneys said, another reason why he should be monitored.

After a brief recess, the court stated, "You were correct in saying that the Alford plea shows no remorse." The court then concluded that defendant required the highest possible level of monitoring. The court then stated, "The Court notes specifically the Alford plea as being one in which the defendant indicated no remorse whatsoever for anything that he did, that he simply accepted responsibility for an offense which he believed to be in his best interest."

Based upon these facts, it is unclear to this Court whether the trial court found that defendant's *Alford* plea *itself* showed a lack of

remorse, or whether defendant's *actions* showed a lack of remorse. While we have not found any authority holding that the former is permissible,[4] the latter is allowed under the rationale of *Knight*, *Smith*, and *Howry*. Therefore, the trial court's finding regarding defendant's lack of remorse is unsupported by competent evidence and does not support the court's conclusion that defendant required the highest possible level of supervision and monitoring.

Since only two of the trial court's findings are supported by competent evidence "which *could* support findings of fact which *could* lead to a conclusion that 'the defendant requires the highest possible level of supervision and monitoring,' . . . it would be proper to remand this case to the trial court to consider the evidence and make additional findings[.]" *Kilby*, 198 N.C. App. at 370, 679 S.E.2d at 434 (emphases added). Therefore, on remand the trial court may consider evidence regarding whether defendant's actions showed remorse, and must determine whether its findings support a conclusion that defendant "requires the highest possible level of supervision and monitoring."

## VII. CONSTITUTIONAL ARGUMENTS AGAINST SBM

**[6]** Defendant argues that ordering him to submit to SBM violated his constitutional rights to be free from double jeopardy and free from cruel and unusual punishment. We disagree.

In *State v. Bowditch*, our Supreme Court rejected a defendant's argument that requiring him to enroll in SBM violated his constitutional right to be free from double jeopardy. 364 N.C. 335, 700 S.E.2d 1, *stay denied*, ___ N.C. ___, 703 S.E.2d 151 (2010). Similarly, in *State v. Wagoner*, ___ N.C. App. ___, 683 S.E.2d 391 (2009), *aff'd per curiam*, 364 N.C. 422, 700 S.E.2d 222 (2010), our courts rejected a defendant's argument that requiring him to enroll in SBM violated the Eighth Amendment's prohibition against cruel and unusual punishment. To accept defendant's arguments in the instant case, "we would have to overrule our Supreme Court which we do not have the power to do." *State v. Porter*, 48 N.C. App. 565, 570, 269 S.E.2d 266, 269 (1980).

## VIII. CONCLUSION

The trial court's order requiring defendant to enroll in SBM for a period of ten years is vacated and remanded.

---

4. *But see State v. Williams*, 937 S.W.2d 330, 334 (Mo. App. 1996) (when plea agreement is reached with a defendant who initially agrees to plead guilty, but who subsequently agrees to a plea agreement pursuant to *Alford*, such action "eliminates any showing of remorse or taking of responsibility by the appellant").

Vacated and remanded.

Judge ELMORE concurs.

Judge STEELMAN concurs in the result.