

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112054 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Ste. Genevieve County |
| vs. | ) | 21MD-CR00026-02 |
| | ) | |
| DUSTIN E. HOMAN, | ) | Honorable Wendy W. Horn |
| | ) | |
| Appellant. | ) | Filed: September 24, 2024 |

Before James M. Dowd, P.J., Angela T. Quigless, J., and Cristian M. Stevens, J.

## OPINION

In this criminal case, Dustin Homan pleaded guilty, pursuant to *North Carolina v. Alford*,

400 U.S. 25 (1970),[1] to two counts of felony domestic assault arising from an incident in which

he violently attacked his ex-wife and his father. The trial court sentenced Homan to consecutive

prison terms of seven years for the second-degree domestic assault against Father and four years

for the third-degree domestic assault against Ex-wife for a total of eleven years.

Homan now appeals asserting that the trial court erred (1) by denying his motion to

continue the sentencing hearing; (2) by sentencing him in partial reliance on unproven and

disputed allegations of misconduct made by the two victims; (3) by taking into account in its

sentencing decision Homan's lack of remorse since in his *Alford* plea Homan did not admit to

---

[1] An *Alford* plea allows a defendant to plead guilty to a charged offense and accept the penalty
for the crime even if he is unwilling or unable to admit to committing the acts constituting the
offense. *Frazier v. State*, 581 S.W.3d 118, 125 (Mo. App. S.D. 2019).

committing the crimes; and (4) the maximum sentences imposed by the court are grossly disproportionate to the circumstances of his criminal conduct. We affirm.

## Background

On January 11, 2021, in an incident recorded on video, Homan assaulted his Ex-wife and his Father in the presence of his two children, leaving Father seriously injured. On May 16, 2023, Homan entered his *Alford* plea of guilty. At the plea hearing, defense counsel informed the court that he intended to file a detailed sentencing memorandum. The court set the sentencing hearing for July 28, 2023, and instructed the prosecutor to obtain the sentencing assessment report (SAR) from the Department of Probation and Parole and to electronically file it with the court at least five days before the sentencing. On July 19, the Department obtained an extension to complete the SAR by September 19.

On September 1, the State submitted a partial SAR which included Ex-wife's and Father's victim impact statements. Ex-wife's statement described Homan's violent conduct the night of the assault. Father's statement also detailed Homan's violence and added assertions of Homan's illegal drug use and addiction. Both statements expressed concern for Ex-wife's and Father's safety and for the safety of the children. Six days before the September 19 hearing, Homan requested a continuance to investigate and respond to Ex-wife's and Father's statements since "a number of the assertions in that assessment require detailed briefing and response." Homan also claimed he had learned that the State intended to put on collateral evidence through a bail bondsman of additional allegations of uncharged bad acts, namely, Homan's threats to kill the prosecutor. On September 13, the State moved to revoke Homan's bond based on the bondsman's allegations that Homan told him he was having the prosecutor surveilled and that he would kill him if he was sentenced to prison.

On September 19, the court entertained three matters, Homan's continuance motion, the State's motion to revoke his bond, and Homan's sentencing. Regarding the continuance motion,

2

Homan claimed he needed additional time to review the record of his and Ex-wife's divorce proceedings to identify contradictory testimony within that record that he claimed would undermine certain allegations made by Father and Ex-wife in their victim impact statements. He also claimed he needed more time to prepare with respect to the bondsman's claims regarding Homan's threats.

After the court denied the continuance, the record appears to suggest that the court then turned to the State's bond revocation motion. To that end, the prosecutor broached the subject of the bondsman's anticipated testimony regarding his two phone conversations with Homan. The prosecutor explained that in the bondsman and Homan's first conversation, which was not recorded, Homan said he would kill the prosecutor if he was sentenced to prison. Then, after the bondsman notified the prosecutor of the threat and consulted with the highway patrol, the bondsman recorded the second call with Homan in which he repeated the threat.

Homan's counsel requested to listen to the recording of the second phone call in order to effectively cross-examine the bondsman. When the prosecutor stated he did not intend to play the recording and, in fact, did not have the recording with him, Homan moved to exclude the bondsman's testimony about the second phone call. At that point, the prosecutor stated that he notified the defense of the recording's existence in order to caution Homan regarding perjury in the event he chose to testify to those conversations. The court echoed the prosecutor's sentiment in that regard.

Then, the State put on evidence including the SAR, the video recording of Homan's crimes, and the bondman's testimony. In this way, the State lumped together its evidence applicable to the court's sentencing decision and the court's decision on the State's bond revocation motion which created some confusion for the trial court.

Nevertheless, the bondsman testified that in his first conversation with Homan in late August 2023, Homan told him that he was having the prosecutor followed and stated, "you tell

3

him that I want a deal for probation prior to my sentencing and if I don't get that, this is a life for a life." In the second recorded conversation, Homan phoned the bondsman inquiring about the prosecutor's reaction to his earlier threat. After the bondsman told Homan that the prosecutor dismissed the threat, Homan replied: "Man, he shouldn't shrug that off. Now, I'm serious … I've never made a threat that I haven't followed through with. Never … I'm going to get him." Homan did not object to the bondsman's testimony, but instead cross-examined him.

At that point, the trial court remarked that the sentencing hearing had gotten sidetracked by the bondsman's testimony which related to the bond revocation. The court then assured the parties that its focus with regard to the sentencing decision would be the January 11, 2021 crimes before it and the court's review of the file, the victim impact statements, and the SAR. The court also stated its concern that Homan had failed to show or express any remorse. The court sentenced Homan to the maximum on each count to run consecutively for a total of eleven years in prison. This appeal follows.

**Discussion**

I.

In his first point, Homan claims the trial court erroneously denied his request to continue the September 19 sentencing hearing to allow him to prepare a detailed sentencing memorandum and to obtain and present testimony from Homan's divorce trial transcript.[2]

A trial court's decision whether to grant a motion for a continuance is reviewed under our abuse of discretion standard. *State v. Jones*, 479 S.W.3d 100, 111-12 (Mo. banc 2016). An abuse of discretion occurs when the trial court's ruling was so illogical, arbitrary, and

---

[2] Homan also claims in his brief that the court should have continued his sentencing hearing so that he could better respond to the bondsman's allegations that he had threatened to kill the prosecutor which he learned less than two weeks prior to the hearing. Those allegations, although discussed during the sentencing hearing, pertain to the State's motion to revoke Homan's bond and there is no record that Homan moved to continue the hearing on the motion to revoke bond.

4

unreasonable as to shock the sense of justice and indicates a lack of careful consideration. *State v. Smith*, 491 S.W.3d 286, 297 (Mo. App. E.D. 2019). Additionally, a defendant bears the burden of showing prejudice and reversal is only warranted "upon a very strong showing that the court abused its discretion and prejudice resulted." *Jones*, 479 S.W.3d at 111 (quoting *State v. Edwards*, 116 S.W.3d 511, 535 (Mo. banc. 2003)). "A defendant is prejudiced from the denial of a motion for a continuance if granting the continuance could have affected the outcome of the case." *State v. Brown*, 517 S.W.3d 617, 631 (Mo. App. E.D. 2017).

Finding no abuse of discretion by the trial court, we deny this point. Homan's principal claim is that he needed more time to review the record of his December 2022 divorce trial in order to be able to identify testimony there that he claims would have undermined Ex-wife's and Father's allegations appearing in the SAR. His claim is fatally undermined by the fact that he was aware of those statements eighteen days before the hearing and he conceded that at least as of September 13, the day he filed his continuance motion, he had the audio recording. Homan has failed to explain why that was not enough time. In our judgment, Homan had plenty of time and opportunity to respond to the allegations in the SAR and therefore his due process rights were unmolested.

Moreover, Homan has failed to demonstrate any prejudice because his counsel, in closing argument, was able to counter the victims' statements by attacking the character and credibility of Father including Father's alleged alcohol issues and the alleged threat he made the day of the crimes. Likewise, counsel was able to present Homan's assertion that he was provoked that day when he arrived home to find Ex-wife on the phone with a paramour. Under these circumstances, we will not convict the trial court of an abuse of discretion. Point I is denied.

## II.

Homan asserts in Point II that the trial court erred because its sentencing decision was based upon unproven and disputed allegations made in the SAR and at the September 19 hearing.

5

Homan requests we review this point under our abuse of discretion standard because he objected to the "unproven and disputed" allegations in the victim impact statements. Alternatively, Homan requests plain error review. We find that Homan has failed to preserve this claim because the record shows that Homan did not object to this evidence at all and "[t]o preserve an objection, the objection must be specific and made contemporaneously with the purported error." *State v. Minor*, 648 S.W.3d 721, 729 (Mo. banc 2022).

"Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, where the court finds that manifest injustice or miscarriage of justice resulted therefrom." Rule 84.13(c). "'The threshold issue in plain error review is whether the circuit court's error was facially evident, obvious, and clear. If the appellant establishes a facially evident, obvious, and clear error, then this Court will consider whether the error resulted in a manifest injustice or miscarriage of justice. To obtain a new trial on direct appeal based on a claim of plain error, the appellant must show the error was outcome determinative.'" *State v. Teter*, 665 S.W.3d 306, 312 (Mo. banc 2023) (quoting *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019)).

Our review of the record does not indicate any evident, obvious, or clear error and therefore we decline to review this unpreserved point for plain error. Point II is denied.

### III.

Third, Homan claims the trial court erred in considering his purported "lack of remorse" in its sentencing decision because Homan pleaded guilty pursuant to *Alford* and therefore consideration of his lack of remorse was not relevant or permissible.

We again consider this unpreserved argument for plain error and find no obvious, evident, or clear error. However, this is an interesting issue of first impression for this Court and based on the limited case law in our sister states, which we find to be persuasive, trial courts may consider defendant's lack of remorse at sentencing even when the defendant enters an *Alford*

6

plea. *State v. Knight*, 701 N.W.2d 83, 88 (Iowa 2005); *Smith v. Commonwealth*, 27 Va.App. 357, 363, 499 S.E.2d 11, 14 (1998); *State v. Howry*, 127 Idaho 94, 96, 896 P.2d 1002, 1004 (Ct. App. 1995); *State v. Jarvis*, 214 N.C.App. 84, 97, 715 S.E.2d 252, 261 (2011). Therefore, even if we were to review the point, we would find that the trial court did not err in considering Homan's lack of remorse in its sentence. Point III is denied.

## IV.

Lastly, Homan claims that the maximum sentences the court gave him were grossly disproportionate to the crimes he committed as a first-time offender. We again disagree.

A trial court's sentencing decision is reviewed for abuse of discretion. *State v. Mort*, 321 S.W.3d 471, 484 (Mo. App. S.D. 2010). To determine whether a sentence is grossly disproportionate, we consider the gravity of the offense and the harshness of the penalty. *Yuille v. State*, 654 S.W.3d 416, 422 (Mo. App. W.D. 2022). "Gross disproportionality will be found only in exceedingly rare and extreme cases." *Id.* "A sentence within the range prescribed by statute generally will not be found excessive, or grossly disproportionate, to the crime committed." *Id.* This is because we give great deference to the legislature's prescription of punishment. *State v. Mubarak*, 163 S.W.3d 624, 631 (Mo. App. S.D. 2005).

The trial court's decision to sentence Homan to the maximum on each count consecutively was certainly not so unreasonable and arbitrary as to shock the sense of justice and indicate a lack of careful consideration. The facts establish Homan brutally assaulted his Ex-wife and his Father in front of his two children. Homan seriously injured Father which required two surgeries. Moreover, both victims expressed on-going concern for their safety and the safety of the children. Due to the violence of the crime, and the victims' fear of Homan, we do not find that the trial court's sentence was excessively harsh or disproportionate. Lastly, the sentencing court noted, and we agree, that Homan was fortunate the State dismissed three of the five charges and reduced the class A felony charge to a class D felony. Homan's final point is denied.

7

## Conclusion

We affirm for the reasons set forth above.

_____
James M. Dowd, Presiding Judge

Angela T. Quigless, J., and
Cristian M. Stevens, J., concur.

8