STATE OF NORTH CAROLINA v. STEPHEN JACK STINES, Defendant

No. COA08-1418

(Filed 6 October 2009)

**1. Constitutional Law— *ex post facto*—satellite-based monitoring (SBM)**

The required enrollment of defendant in a SBM system did not violate the *ex post facto* clauses of the state and federal constitutions.

**2. Sentencing— satellite-based monitoring (SBM)—notice— not sufficiently specific**

Defendant was entitled to a new hearing to determine whether he would be required to enroll in a SBM where the notice given to him by the Department of Correction did not specify the applicable category of N.C.G.S. § 14-208.40(a) or give a brief statement of the factual basis for that determination.

Appeal by defendant from order entered 26 June 2008 by Judge Nathaniel J. Poovey in Catawba County Superior Court. Heard in the Court of Appeals 9 April 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Catherine M. (Katie) Kayser, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Kristen L. Todd, for defendant-appellant.*

GEER, Judge.

Defendant Stephen Jack Stines, a convicted sex offender, appeals from the trial court's order requiring him to enroll in the State's Satellite-Based Monitoring ("SBM") program. On appeal, defendant primarily contends that the State violated his procedural due process rights by failing to give him sufficient notice in advance of the SBM hearing of the basis for the Department of Correction's preliminary determination that he met the criteria for enrollment in the SBM program. After reviewing the statute at issue, N.C. Gen. Stat. § 14-208.40B (2007), we conclude that the statute itself requires that the Department of Correction notify the offender, in advance of the SBM hearing, of the basis for its determination that the offender falls within one of the categories set out in N.C. Gen. Stat. § 14-208.40(a) (2007), making the offender subject to enrollment in the SBM program. Because defendant, in this case, did not receive such notice, we reverse and remand for a new SBM hearing.

### Facts

Defendant was convicted of taking indecent liberties with a child on 4 December 1997 and was sentenced to 17 to 21 months imprisonment. He subsequently pled guilty to another count of taking indecent liberties with a child on 17 May 2004 and was sentenced to 34 to 41 months imprisonment. Defendant was released from prison in January 2007 and placed on post-release supervision for five years.

STATE v. STINES

[200 N.C. App. 193 (2009)]

In 2007, the General Assembly enacted N.C. Gen. Stat. § 14-208.40A (2007) and N.C. Gen. Stat. § 14-208.40B, which together set out the procedure for determining who is required to enroll in the SBM program. N.C. Gen. Stat. § 14-208.40B applies to offenders, like defendant in this case, who were previously convicted and sentenced without consideration of SBM. Pursuant to that statute, when an offender has been previously convicted and sentenced for a reportable conviction as defined by N.C. Gen. Stat. § 14-208.6(4) (2007), but a court has never determined whether he should be required to enroll in the SBM program, the Department of Correction must make an initial determination as to whether he falls into one of the categories of offenders set out in N.C. Gen. Stat. § 14-208.40(a). N.C. Gen. Stat. § 14-208.40B(b) further provides that if the Department of Correction determines that the offender does fall within N.C. Gen. Stat. § 14-208.40(a), it shall schedule an SBM hearing and shall notify the offender of the Department's determination and the date of the hearing.

On 15 February 2008, defendant received a letter from the Department of Correction informing him that he was to appear for an SBM hearing. The letter notified defendant that "[t]he Department of Correction has made the initial determination that you meet the criteria set out in General Statute 14-208.40(a), which requires your enrollment in Satellite Based Monitoring." The letter did not identify which of the criteria in N.C. Gen. Stat. § 14-208.40(a) the Department had concluded defendant met. After setting out the date, time, and location of the hearing, the letter explained that a trial court would finally decide whether defendant would be required to enroll in the SBM program.

At the hearing in Catawba County Superior Court on 23 June 2008, defendant moved to dismiss the proceedings against him, arguing that the application of the statute to him violated the *ex post facto* clauses of the state and federal constitutions. Defendant also argued that the letter sent to him by the Department of Correction was insufficient notice under the Due Process Clause of the United States Constitution and the Law of the Land Clause of the North Carolina Constitution. The trial court denied defendant's motion to dismiss and found that defendant fell within N.C. Gen. Stat. § 14-208.40(a) because "defendant is a recidivist as that term is defined pursuant to 14-208.2(b) [sic] in that he has two reportable convictions of taking indecent liberties with a minor or with a child." The trial court ordered defendant to enroll in the SBM program for the remainder of his natural life. Defendant timely appealed to this Court.

Discussion

**[1]** On appeal, defendant first contends that requiring him to enroll in the SBM program violates the *ex post facto* clauses of the state and federal constitutions. This Court, however, recently rejected this argument in *State v. Bare*, 197 N.C. App. 461, 478, 677 S.E.2d 518, 531 (2009) (holding that retroactive application of SBM program does not violate *ex post facto* clause because program was intended by legislature to be civil, regulatory scheme and its effects are not so punitive as to negate that intent). We, therefore, do not discuss that argument further.

**[2]** Defendant further contends that his procedural due process rights were violated because the Department's hearing notification letter did not indicate which of the N.C. Gen. Stat. § 14-208.40(a) categories applied to him or explain the basis for that determination. Our appellate courts have held that "[n]o process is due a person who is deprived of an interest by official action unless that interest is protected by law, *i.e.*, unless it is an interest in life, liberty or property." *Henry v. Edmisten*, 315 N.C. 474, 480, 340 S.E.2d 720, 725 (1986). Once a protected life, liberty, or property interest has been demonstrated, the Court "must inquire further and determine exactly what procedure or 'process' is due." *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998).

We believe that requiring defendant to submit to SBM implicates a protected liberty interest. Although defendant is on post-release supervision and, accordingly, his liberty is already somewhat restricted, the SBM will continue past the conclusion of his post-release supervision. *See* N.C. Gen. Stat. § 14-208.42 (2007). In addition, if an offender is ordered to enroll in the SBM program, he will be required to have the necessary monitoring equipment attached to his person, and he will be required to cooperate with the Department of Correction and the SBM program's regulations. *Id.* The General Assembly has made it a criminal offense if the offender (1) fails to enroll in the program, (2) intentionally tampers or interferes with the functioning of the SBM device, or (3) fails to cooperate with the Department of Correction guidelines and regulations for the SBM program. N.C. Gen. Stat. § 14-208.44 (2007). The SBM program is required to use a global positioning system ("GPS") that permits time-correlated and continuous tracking of the offender and reporting of the offender's location from a minimum of once a day to a maximum of near real time. N.C. Gen. Stat. § 14-208.40(c).

Although our courts have not had occasion to address this issue before, in *Commonwealth v. Cory*, 454 Mass. 559, 911 N.E.2d 187 (2009), the Massachusetts Supreme Judicial Court recently discussed whether required participation in SBM infringes upon a protected liberty interest. The court identified two ways in which a GPS device would burden an individual's liberty: "by its permanent, physical attachment to the offender, and by its continuous surveillance of the offender's activities." *Id.* at 570, 911 N.E.2d at 916.

With respect to the first of these, the court reasoned that requiring an individual to permanently attach a GPS device to his or her person would be "dramatically more intrusive and burdensome" than the burden imposed through the State's sex offender registration program. *Id.* The court explained:

> There is no context other than punishment in which the State physically attaches an item to a person, without consent and also without consideration of individual circumstances, that must remain attached for a period of years and may not be tampered with or removed on penalty of imprisonment. Such an imposition is a serious, affirmative restraint.

*Id.* As for the second potential intrusion on liberty, the court maintained:

> The intended function of the GPS device, continuous reporting of the offender's location to the probation department, also represents an affirmative burden on liberty. While GPS monitoring does not rise to the same level of intrusive regulation that having a personal guard constantly and physically present would impose, it is certainly far greater than that associated with traditional monitoring. And the impact of such intrusion is of course heightened by the physical attachment of the GPS bracelet, which serves as a continual reminder of the State's oversight.

*Id.* at 570-71, 911 N.E.2d at 196-97.

The court then concluded that "[t]he GPS requirement thus places significant restraints on offenders" that amount to "liberty burdens." *Id.* at 571, 911 N.E.2d at 197. *See also U.S. v. Smedley*, 611 F. Supp. 2d 971, 975 (E.D. Mo. 2009) (holding that imposing home detention with electronic monitoring as condition of release impinged on liberty interest); *U.S. v. Merritt*, 612 F. Supp. 2d 1074, 1079 (D. Neb. 2009) (holding that "[a] curfew with electronic monitoring restricts the defendant's ability to move about at will and implicates a liberty

interest protected under the Due Process Clause"); *U.S. v. Arzberger*, 592 F. Supp. 2d 590, 600 (S.D.N.Y. 2008) (recognizing that "the curfew and attendant electronic monitoring here would impinge on a constitutionally-protected liberty interest").

We agree with the reasoning of the Massachusetts Supreme Judicial Court and hold that requiring enrollment in the SBM program does deprive an offender of a significant liberty interest. We must, therefore, next determine whether defendant, in this case, was given all the process he was due. Our Supreme Court has stressed that "[t]he fundamental premise of procedural due process protection is notice and the opportunity to be heard." *Peace*, 349 N.C. at 322, 507 S.E.2d at 278. "At a minimum, due process requires adequate notice of the charges and a fair opportunity to meet them, and the particulars of notice and hearing must be tailored to the capacities and circumstances of those who are to be heard." *In re Lamm*, 116 N.C. App. 382, 386, 448 S.E.2d 125, 128-29 (1994), *aff'd per curiam*, 341 N.C. 196, 458 S.E.2d 921 (1995), *cert. denied*, 516 U.S. 1047, 133 L. Ed. 2d 663, 116 S. Ct. 708 (1996). As there is no contention that defendant was deprived of the opportunity to be heard, the sole issue here is whether the notice given to defendant was sufficient.

The State contends that N.C. Gen. Stat. § 14-208.40B does not require any more notice than it gave defendant. Specifically, the State argues that the only requirement under the statute is that the Department notify the individual that an initial determination has been made that the offender falls within N.C. Gen. Stat. § 14-208.40(a) without need for any specification of which category was determined to apply. We do not believe that this interpretation of N.C. Gen. Stat. § 14-208.40B is consistent with either the statute's plain language or the due process requirement of notice. "It is a cardinal principle of statutory construction that, where possible, courts will construe statutes to avoid serious doubts about their constitutionality." *State v. Worthington*, 89 N.C. App. 88, 91, 365 S.E.2d 317, 320, *appeal dismissed*, 322 N.C. 115, 367 S.E.2d 134 (1988). *See also Barringer v. Caldwell County Bd. of Educ.*, 123 N.C. App. 373, 381, 473 S.E.2d 435, 440 (1996) (observing the rule that "statutes are to be construed whenever possible so as to uphold their constitutionality"). Construing N.C. Gen. Stat. § 14-208.40B(b) to allow the degree of notice advocated by the State would likely result in a violation of defendant's procedural due process rights.

The statute itself requires that the Department of Correction "shall make an initial determination on whether the offender falls

into one of the categories described in G.S. 14-208.40(a)." N.C. Gen. Stat. § 14-208.40B(a). The statute then further provides:

> If the Department determines that the offender falls into one of the categories described in G.S. 14-208.40(a), the Department shall schedule a hearing in the court of the county in which the offender resides. *The Department shall notify the offender of the Department's determination and the date of the scheduled hearing* by certified mail sent to the address provided by the offender pursuant to G.S. 14-208.7. The hearing shall be scheduled no sooner than 15 days from the date the notification is mailed. Receipt of notification shall be presumed to be the date indicated by the certified mail receipt.

N.C. Gen. Stat. § 14-208.40B(b) (emphasis added). In short, the statute requires that the Department, after making an initial determination that the offender falls into one of the § 14-208.40(a) categories, then notify the individual of that determination and the date of the scheduled hearing.

Thus, the statute requires notice of two facts: (1) the hearing date and (2) the Department's determination with respect to N.C. Gen. Stat. § 14-208.40(a). As the scheduling of the hearing automatically notifies the individual that the Department has determined he falls into one of the categories of individuals subject to SBM set out in N.C. Gen. Stat. § 14-208.40(a), the State's interpretation of the statute would render meaningless the statute's additional requirement that the Department notify the offender of its determination. The scheduling of the hearing would, under the State's view, do that by itself. Consequently, the General Assembly must have intended that the additional requirement that the Department "notify the offender of the Department's determination," N.C. Gen. Stat. § 14-208.40B(b), include notification of the Department's actual determination—in other words, specification of the category or categories into which the offender falls and the basis for that conclusion.

This construction of the statute is further supported by the fact that the statute allows the hearing to be held in as short a time frame as 15 days after notification of the hearing. While the State points to the fact that counsel in this case had more time, the relevant consideration is the least amount of time that counsel for the offender could have. We do not believe that it is reasonable to assume that the General Assembly intended that counsel for an offender have to investigate and prepare to respond to all possible categories under

N.C. Gen. Stat. § 14-208.40(a) in a period of time possibly as short as 15 days, especially when the opposition to SBM may require investigation of events occurring years ago.

Moreover, the State's interpretation of N.C. Gen. Stat. § 14-208.40B(b) would give rise to serious questions regarding violation of the offenders' procedural due process rights. In *Wilkinson v. Austin*, 545 U.S. 209, 228-29, 162 L. Ed. 2d 174, 193, 125 S. Ct. 2384, 2397 (2005), the Supreme Court held that the State of Ohio's policy for assigning inmates to its Supermax prison facility was adequate to protect an inmate's procedural due process interests in not being assigned to the Supermax facility because an inmate being considered for placement in the prison must receive notice of the factual basis leading to consideration for such placement and an opportunity for rebuttal. The Court explained that "[o]ur procedural due process cases have consistently observed that these are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations." *Id.* at 226, 162 L. Ed. 2d at 192, 125 S. Ct. at 2396. The Court reasoned that "[r]equiring officials to provide a brief summary of the factual basis for the classification review and allowing the inmate a rebuttal opportunity safeguards against the inmate's being mistaken for another or singled out for insufficient reason." *Id.*

In *Morrissey v. Brewer*, 408 U.S. 471, 486-87, 33 L. Ed. 2d 484, 497, 92 S. Ct. 2593, 2603 (1972), the Supreme Court discussed the degree of notice required for preliminary parole revocation hearings, holding that "the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. *The notice should state what parole violations have been alleged.*" (Emphasis added). For a final parole revocation hearing, the Court held that the "minimum requirements of due process" include "written notice of the claimed violations of parole." *Id.* at 489, 33 L. Ed. 2d at 499, 92 S. Ct. at 2604. Our appellate courts have similarly required notice of the alleged probation violations giving rise to the probation revocation hearing. *See State v. Sellers*, 185 N.C. App. 726, 728, 649 S.E.2d 656, 657 (2007) (explaining that minimum due process requirements in probation revocation hearings include written notice of conditions allegedly violated); *State v. Cunningham*, 63 N.C. App. 470, 475, 305 S.E.2d 193, 196-97 (1983) (holding that evidence was insufficient to support trial court's order revoking defendant's suspended sentence in part because State sought to prove additional conduct not contained in notice to defendant of alleged probation violations).

Additionally, in a variety of other contexts, North Carolina courts have held that procedural due process requires notice sufficient to inform the recipient in advance of a hearing of the bases for the proceedings against him or her so that the individual will have a meaningful opportunity to respond. *See, e.g., Egelhof ex rel. Red Hat, Inc. v. Szulik*, 193 N.C. App. 612, 616, 668 S.E.2d 367, 370 (2008) (noting that although North Carolina courts have not required "a party, against whom statutory sanctions have been sought, to be put on notice of the specific type of sanctions, which may be ordered," courts have "consistently required," as a matter of due process, "(1) notice of the bases of the sanctions and (2) an opportunity to be heard"); *Dunn v. Canoy*, 180 N.C. App. 30, 40, 636 S.E.2d 243, 250 (2006) (holding that "[t]o receive adequate notice, '[t]he bases for the sanctions must be alleged. . . . In order to pass constitutional muster, the person against whom sanctions are to be imposed must be advised in advance of the charges against him.' " (quoting *Griffin v. Griffin*, 348 N.C. 278, 280, 500 S.E.2d 437, 439 (1998))), *appeal dismissed and disc. review denied*, 361 N.C. 351, 645 S.E.2d 766 (2007); *In re Alexander v. Cumberland County Bd. of Educ.*, 171 N.C. App. 649, 658, 615 S.E.2d 408, 415 (2005) (finding no due process violation where student who was suspended for 10 days received notice in advance of hearing of alleged violations); *Owen v. UNC-G Physical Plant*, 121 N.C. App. 682, 686, 468 S.E.2d 813, 816 (explaining that "the federal due process concern for fundamental fairness is satisfied if the employee receives 'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story' " (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 84 L. Ed. 2d 494, 506, 105 S. Ct. 1487, 1495 (1985))), *disc. review improvidently allowed*, 344 N.C. 731, 477 S.E.2d 33 (1996).

We can conceive of no meaningful distinction between these cases—consistently requiring notice in advance of a hearing of the contentions giving rise to the hearing—from an SBM hearing that could result in an offender, for a substantial period of time, having a GPS device attached to his leg, having his whereabouts constantly monitored, and being required to comply with Department of Correction regulations. The State, in arguing that due process does not require such notice, does not address procedural due process cases such as those above, but instead relies solely on *State v. Golphin*, 352 N.C. 364, 533 S.E.2d 168 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305, 121 S. Ct. 1379-80 (2001).

In *Golphin*, the Court held that the State is not required to set out in a short-form murder indictment the specific aggravating circumstances that it intends to rely upon in seeking the death penalty. *Id.* at 397, 533 S.E.2d at 193-94. The Court reasoned that because N.C. Gen. Stat. § 15A-2000(e) (2007) "sets forth the only aggravating circumstances upon which the State may rely in seeking the death penalty," the statute is sufficient notice as to what aggravating circumstances the State might use. 352 N.C. at 396, 533 S.E.2d at 193. Here, the State argues, as N.C. Gen. Stat. § 14-208.40(a) "lists only four possible categories under which an offender may qualify for eligibility in the SBM program," that statute is sufficient notice as to why an offender has been determined to be eligible.

As an initial matter, we note that the Court in *Golphin* did not specifically address the requirements of procedural due process, but rather focused on the ramifications of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), for short-form indictments. Importantly, however, as the Court stressed in *State v. Hunt*, 357 N.C. 257, 265, 582 S.E.2d 593, 599, *cert. denied*, 539 U.S. 985, 156 L. Ed. 2d 702, 124 S. Ct. 43-44 (2003), addressing the same issue, in capital cases there is a "Rule 24 hearing" at which the court and parties "shall" consider "the existence of evidence of aggravating circumstances." Although the prosecutor is not limited to aggravating factors discussed at the Rule 24 hearing, a capital defendant can also request a pretrial hearing on "the legal sufficiency of a set of facts supporting the aggravating circumstances" set out in the statute. *Id.* at 264, 582 S.E.2d at 598. Of course, defense counsel is also entitled to discovery from the State pursuant to N.C. Gen. Stat. § 15A-903 (2007). Finally, in capital cases such as *Golphin* and *Hunt*, defense counsel is not expected to investigate and prepare to defend the 11 potential statutory aggravators in a matter of weeks, but rather will have more than a year to do so.

We do not believe that *Golphin*—addressing capital cases with their unique protections combined with the discovery available in criminal cases generally—warrants the conclusion that the Department of Correction need not advise an offender of the specifics of its determination that an offender falls within the scope of N.C. Gen. Stat. § 14-208.40(a). An SBM hearing is distinguishable from capital sentencing hearings by virtue of the short time frame prior to the SBM hearing, the potential need to investigate matters occurring years earlier depending on the § 14-208.40(a) category identified, and the lack of any other prehearing means to learn the basis for the Department's determination.

We note that with probation revocation hearings, as with SBM hearings, there are only a limited number of possible bases for the revocation hearing because the defendant is already aware of the probation conditions. We nonetheless require notice to the defendant in advance of the hearing of the conditions that the State contends were violated. *See, e.g., Sellers,* 185 N.C. App. at 728, 649 S.E.2d at 657; *Cunningham,* 63 N.C. App. at 475, 305 S.E.2d at 196-97. We believe that the SBM hearing is more analogous to a probation revocation hearing than to a capital sentencing hearing.

The State also argues, citing N.C. Gen. Stat. § 14-208.40A(a), that since the district attorney must present the evidence at the SBM hearing, it follows that the General Assembly did not intend to limit the grounds upon which the district attorney could rely to a ground found initially by the Department of Correction. While N.C. Gen. Stat. § 14-208.40A(a) does specify that the district attorney will conduct the SBM hearing, that section applies only when SBM is being considered *during* a defendant's sentencing hearing. There is no comparable provision in N.C. Gen. Stat. § 14-208.40B, the statute applicable to defendants who have already been sentenced without SBM having been considered.

Moreover, recent amendments to § 14-208.40B have clarified that the hearing will be requested by "the district attorney, *representing the Department.*" 2009 N.C. Sess. Laws ch. 387 § 4 (emphasis added). If the district attorney is "representing" the Department, then there is no conflict with the Department of Correction's being required to disclose its initial determination to the offender in its notice of the SBM hearing. Further, the Department could avoid the problem the State raises by consulting with the district attorney when making the initial eligibility determination.

The State has identified no other reason that the Department of Correction should not be required, in its N.C. Gen. Stat. § 14-208.40B(b) notice to the offender, to set out the bases for its determination that the offender falls into one of the § 14-208.40(a) categories. Given the importance of this notice to an offender, the possible lifelong consequences to the offender's liberty resulting from the hearing, and the lack of any significant burden to the State, we decline to construe N.C. Gen. Stat. § 14-208.40B in the manner advocated by the State as it would likely violate the offender's procedural due process rights. *See Mathews v. Eldridge,* 424 U.S. 319, 334-35, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903 (1976) (holding that test for determining amount of process that is due requires weighing

private interest affected by official action, the risk of erroneous deprivation of interest through procedures used, probable value of additional or substitute procedural safeguards, and government's interest, including burdens that additional procedural requirement would entail).

We, therefore, hold that N.C. Gen. Stat. § 14-208.40B(b)'s requirement that the Department "notify the offender of [its] determination" mandates that the Department, in its notice, specify the category set out in N.C. Gen. Stat. § 14-208.40(a) into which the Department has determined the offender falls and briefly state the factual basis for that conclusion. As the Department's letter to defendant did not provide this information, we must reverse and remand for a new SBM hearing.

Reversed and remanded.

Judges BRYANT and STEPHENS concur.