STATE OF NORTH CAROLINA v. TAVIEOLIS EUGENE HUNT

No. COA11-1223

(Filed 5 June 2012)

**1. Appeal and Error—notice of appeal—Convicted Sex Offender Permanent No Contact Order—imposed civil remedy— certiorari granted**

Defendant's petition for *certiorari* was granted in his appeal from a "Convicted Sex Offender Permanent No Contact Order." Although defendant's appeal from the order imposing a civil rem-

edy, as opposed to a criminal punishment, failed to comply with Rule 3(a), our courts had not yet addressed the civil nature of the order from which he appealed.

## 2. Constitutional Law—unconstitutional punishment—Convicted Sex Offender Permanent No Contact Order—civil remedy

Defendant's argument in a statutory rape and sexual offense case that a Convicted Sex Offender Permanent No Contact Order was part of his criminal sentence and was an unconstitutional punishment was meritless. The legislature intended for N.C.G.S. § 15A-1340.50 to serve as a civil remedy and the effects of the law do not negate its civil intent. The requirement that defendant have no contact with the person he victimized was not, therefore, a punishment as contemplated by N.C. Const. art. XI, § 1.

## 3. Constitutional Law—due process—Convicted Sex Offender Permanent no contact order—notice not required

Defendant's constitutional right to due process of law was not violated in a statutory rape and sexual offense case where the State did not provide him with notice that it intended to seek a Convicted Sex Offender Permanent no contact order. Assuming, *arguendo*, that a protected liberty interest was at stake, N.C.G.S. § 15A-1340.50 does not require the State to give defendant notice that it intended to seek the No Contact Order.

## 4. Constitutional Law—double jeopardy—Convicted Sex Offender Permanent No Contact Order—civil remedy

Defendant's right to be free from double jeopardy in a statutory rape and sexual offense case was not violated when the trial court sentenced him to a term of imprisonment and subjected him to a Convicted Sex Offender Permanent No Contact Order. N.C.G.S. § 15A-1340.50 constitutes a civil remedy and the imposition of a No Contact Order does not implicate the constitutional protection against double jeopardy.

## 5. Sexual Offenders—permanent no contact order—statutory mandate complied with

The trial court did not err in a statutory rape and sexual offense case by failing to hold a hearing, make findings of fact, or enter grounds for entering a Convicted Sex Offender Permanent No Contact Order. The trial court complied with the statutory framework set forth in N.C.G.S. § 15A-1340.50. Defendant was

given the opportunity to show cause why the no contact order should not be entered and the trial court made four findings of fact.

Appeal by defendant from order entered 14 April 2011 by Judge W. Erwin Spainhour in Cabarrus County Superior Court. Heard in the Court of Appeals 6 March 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Brenda Menard, for the State.*

*Linda B. Weisel, for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Tavieolis Eugene Hunt appeals from a "Convicted Sex Offender Permanent No Contact Order" ("No Contact Order" or "the order") entered on 14 April 2011 by Judge W. Erwin Spainhour in Cabarrus County Superior Court. Defendant contends on appeal that: (1) the No Contact Order imposed a criminal punishment not permitted by Article XI, Section I of the North Carolina Constitution; (2) the lack of notice from the State that it intended to seek the No Contact Order violated defendant's right to due process of law; (3) the No Contact Order subjected defendant to double jeopardy; and (4) the trial court did not follow the statutory procedure required by N.C. Gen. Stat. § 15A-1340.50 (2009) when entering the No Contact Order. After careful review, we hold that the imposition of the No Contact Order does not constitute a criminal punishment; rather, it is civil in nature. We further hold that defendant's constitutional rights were not violated and that the trial court complied with the mandates of N.C. Gen. Stat. § 15A-1340.50.

## Background

On 29 March 2010, defendant was indicted on six counts of statutory rape or sexual offense pursuant to N.C. Gen. Stat. § 14-27.7A(a) (2009). The State alleged that defendant had forcible sexual intercourse with his thirteen-year-old half-sister on three occasions, engaged in cunnilingus with her on two occasions, and forced her to perform fellatio on one occasion. On 14 April 2011, defendant entered a plea of guilty. In accord with the plea agreement, the trial court consolidated the six charges into one count for sentencing purposes, found a mitigating factor (defendant had a support system in the community), sentenced defendant to 300-369 months imprisonment, and dismissed defendant's habitual felon charge.

**STATE v. HUNT**

[221 N.C. App. 48 (2012)]

The State requested that the No Contact Order be entered as permitted by N.C. Gen. Stat. § 15A-1340.50. The State claimed that the minor victim wanted the No Contact Order to be entered; that the victim had reason to fear future contact with defendant because defendant would likely be aware of her contact information; and that the offense perpetrated against the victim was violent and unprovoked. On two occasions the trial court gave defendant an opportunity to address any matter raised at the sentencing hearing. Defendant chose to apologize to the victim and her family but did not contest his sentence or the No Contact Order. The trial court utilized AOC form 620 to enter the No Contact Order. The trial court found:

1. The defendant was convicted of a criminal offense requiring registration under Article 27A of Chapter 14 of the General Statutes, as shown on the attached judgment and the attached AOC-CR-615, which are incorporated herein by reference.

2. The State requested that the Court determine whether to issue a permanent no contact order prohibiting contact by the defend-ant with the victim for the remainder of the defendant's natural life.

3. Following the State's request, the Court ordered the defendant to show cause why the Court should not issue a permanent no contact order prohibiting contact by the defendant with the victim for the remainder of the defendant's natural life.

Based on the State's argument, the trial court found that the following grounds existed for the victim to fear future contact with defendant: (1) "[t]he defendant is her half-brother, and would be aware of her address and contact information[,]" and (2) "[t]he offense was violent and unprovoked." The trial court concluded as a matter of law that "reasonable grounds exist for the victim to fear any future contact with the defendant." The trial court then entered the following restrictions:

1. The defendant shall not threaten, visit, assault, molest, or otherwise interfere with the victim.

2. The defendant shall not follow the victim, including at the victim's workplace.

3. The defendant shall not harass the victim.

4. The defendant shall not abuse or injure the victim.

5. The defendant shall not contact the victim by telephone, written communication, or electronic means.

6. The defendant shall refrain from entering or remaining present at the victim's residence, school, place of employment . . . at times when the victim is present.

The pre-printed AOC form states that the No Contact Order "is incorporated into the judgment imposing sentence in this case." Defendant signed an acknowledgment on the form certifying that he "was notified of the above no contact order by the Court." Defendant was made aware that violating the No Contact Order constitutes a Class A1 misdemeanor.

The prosecutor informed the trial court that the State was seeking to classify defendant as a sexually violent predator; however, that determination would need to be made at a later date. The trial court partially completed a "Judicial Findings and Order for Sex Offenders - Active Punishment" form. The trial court found that defendant had committed a "sexually violent offense," that defendant was not a recidivist, that he was not convicted of an aggravated offense, and that he was convicted of an offense that involved the physical, mental, or sexual abuse of a minor. The trial court did not determine whether defendant was required to register as a sex offender or whether he was subject to satellite based monitoring ("SBM"). The notation "to be determined at a later date[,]" was written at the top of the form.

On 26 April 2011, defendant entered a *pro se* notice of appeal. He was subsequently assigned appellate counsel.

### Discussion

### I. Grounds for Appellate Review

**[1]** First, we must determine if this appeal is properly before us. Defendant claims that he has a right to appeal from his guilty plea pursuant to N.C. Gen. Stat. § 15A-1444(a1) and (a2)(2) (2009). Alternatively, defendant recognizes that if the No Contact Order from which he appeals imposes a civil remedy as opposed to a criminal punishment, then he was required to comply with Rule 3(a) of the North Carolina Rules of Appellate Procedure when filing his notice of appeal. *State v. Brooks*, 204 N.C. App. 193, 194-95, 693 S.E.2d 204, 206 (2010) (holding that the defendant was required to comply with Rule 3(a) when appealing an order requiring the defendant to enroll in

SBM, which has been held to be a civil regulatory scheme). Defendant acknowledges that he did not comply with Rule 3(a) and asks this Court to grant his petition for writ of *certiorari.*

As discussed *infra,* we hold that the No Contact Order imposes a civil remedy. Consequently, we hold that a notice of appeal from this order must comply with Rule 3(a). *Id.* Defendant did not properly file his notice of appeal; however, "[d]efendant would have needed a considerable degree of foresight in order to understand" that his notice of appeal was ineffective at the time he entered it given the fact that our courts have not addressed the civil nature of the order from which he appealed. *State v. Clark,* ____ N.C. App. ____, ____, 714 S.E.2d 754, 761 (2011) (internal quotation omitted). This Court has granted *certiorari* in similar circumstances. *Id.; State v. Carter,* ____ N.C. App. ____, ____, 718 S.E.2d 687, 698-99 (2011). Thus, "[i]n the interest of justice, and to expedite the decision in the public interest," *Brooks,* 204 N.C. App. at 195, 693 S.E.2d at 206, we grant defendant's petition for writ of *certiorari.*

## II. North Carolina Constitution Article XI, Section I

[2] First, we address defendant's claim that N.C. Gen. Stat. § 15A-1340.50 permits an unconstitutional punishment. Defendant did not object to entry of the order on constitutional grounds at the sentencing hearing; however, N.C. Gen. Stat. § 15A-1446(d)(18) (2009) states that a defendant is not required to object at the sentencing hearing if "[t]he sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law." Consequently, we address defendant's argument that the No Contact Order was part of his criminal sentence and was an unconstitutional punishment. *See State v. Borges,* 183 N.C. App. 240, 245, 644 S.E.2d 250, 254 (2007) (holding that the defendant's argument that a statute violated the *ex post facto* clause of the North Carolina Constitution was preserved pursuant to N.C. Gen. Stat. § 15A-1446(d)(18) despite the defendant's failure to present that argument to the trial court at sentencing).

Here, defendant specifically claims that Article XI, Section I of the North Carolina Constitution does not contemplate the No Contact Order as a permissible criminal punishment. The provision states:

The following *punishments* only shall be known to the laws of this State: death, imprisonment, fines, suspension of a jail or prison term with or without conditions, restitution, community

service, restraints on liberty, work programs, removal from office, and disqualification to hold and enjoy any office of honor, trust, or profit under this State.

N.C. Const. art. XI, § 1 (emphasis added). The State contends that the statute at issue constitutes a civil remedy and is not a punishment, thereby removing it from the scope of N.C. Const. art. XI, § 1. Consequently, the dispositive inquiry is whether the No Contact Order is a criminal punishment (i.e. punitive) or a civil remedy.

This Court has held that the requirement that convicted sex offenders comply with registration requirements pursuant to N.C. Gen. Stat. § 14-208.5, *et. seq.* (2009), is civil in nature as opposed to punitive. *State v. White*, 162 N.C. App. 183, 590 S.E.2d 448 (2004); *accord State v. Sakobie*, 165 N.C. App. 447, 451-52, 598 S.E.2d 615, 618 (2004). Our Supreme Court has held that our State's SBM statutory scheme, N.C. Gen. Stat. § 14–208.40, *et. seq.* (2009), is likewise civil in nature. *State v. Bowditch*, 364 N.C. 335, 352, 700 S.E.2d 1, 13 (2010).[1] Our courts have not addressed whether a No Contact Order is civil or punitive. The framework for deciding whether a statute is civil or punitive is well settled.

We must ascertain whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and non-punitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil.

*Smith v. Doe*, 538 U.S. 84, 92, 155 L. Ed. 2d 164, 176 (2003) (citations and quotation marks omitted). "In summary, a court looks first at the intended purpose of the law. If the declared purpose was to enact a civil regulatory scheme, then the court determines whether either the purpose or effect is so punitive as to negate any intent to deem the scheme civil." *White*, 162 N.C. App. at 192, 590 S.E.2d at 454. " '[O]nly the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal

---

1. While many of the cases cited herein address the defendant's argument that the statute at issue violated the *ex post facto* clause of the United States and North Carolina Constitutions, the dispositive issue, as here, was whether the statute was civil or criminal. Therefore, even though the ultimate determination in this case pertains to N.C. Const. art. XI, § 1, not the *ex post facto* clause, these cases are relevant to the civil versus criminal analysis.

penalty[.]" *Smith,* 538 U.S. at 92, 155 L. Ed. 2d at 176 (quoting *Hudson v. United States,* 522 U.S. 93, 100, 139 L. Ed. 2d 450, 459 (1997)).

## A. Legislative Intent

"Our analysis begins with discerning through statutory construction the legislative objective, whether announced expressly or indicated impliedly," regarding the civil or criminal classification of N.C. Gen. Stat. § 15A-1340.50. *Bowditch,* 364 N.C. at 342, 700 S.E.2d at 6 (citations and quotation marks omitted). "The text, structure, manner of codification, and enforcement procedures of the statutory scheme are a few of the probative indicators of legislative intent." *Id.* As with the SBM statutory scheme, the legislature did not expressly label N.C. Gen. Stat. § 15A-1340.50 as civil or criminal, nor did it enact a section specifying its purpose. The session law merely states that it is

> An Act to Provide That When Sentencing a Defendant Convicted of a Sex Offense and Upon Request of the District Attorney, the Court May Enter a Permanent No Contact Order Prohibiting Any Future Contact of a Convicted Sex Offender with the Crime Victim if the Court Determines That Appropriate Grounds Exist for the Order.

2009 N.C. Sess. Laws ch. 380, § 1. Though instructive, the title of the session law does not explicitly relay the purpose behind its enactment. However, the text of the statute itself sheds additional light on its purpose. First, the statute makes clear that grounds must "exist for the victim to fear any future contact with the defendant[.]" N.C. Gen. Stat. § 15A-1340.50(e). Second, the statute sets forth six enumerated restrictions that the defendant must abide by, if so ordered by the court, such as contacting, threatening, assaulting, molesting, following, harassing, or abusing the victim. N.C. Gen. Stat. § 15A-1340.50(f)(1)-(6). When viewing the session law title and the relevant portions of the statute, the legislative purpose becomes clear—to protect an individual who fears contact with the defendant from being contacted or harmed, either mentally or physically, by the convicted sex offender who purportedly victimized him or her. This protection is needed due to the well-established fact that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *McKune v. Lile,* 536 U.S. 24, 33, 153 L. Ed. 2d 47, 56 (2002); *see also Bowditch,* 364 N.C. at 352, 700 S.E.2d at 12 ("The risk of recidivism posed by sex offenders has been widely documented and is well established."). The Court in *Bowditch,* 364 N.C. at 342, 700

S.E.2d at 6, and *White*, 162 N.C. App. at 193, 590 S.E.2d at 455, recognized that one of the primary purposes of the SBM and registration statutes respectively is ·to protect society from recidivists. The *Bowditch* Court ultimately concluded: "The SBM program at issue was enacted with the intent to create a civil, regulatory scheme to protect citizens of our state from the threat posed by the recidivist tendencies of convicted sex offenders." 364 N.C. at 352, 700 S.E.2d at 13. While the statute at issue in this case only protects one citizen from the threat posed by recidivist tendencies, as opposed to all citizens of our state, the statute nonetheless serves an almost identical function. Arguably, the statute presents a more concrete function in that it offers protection to one who has already been victimized and is still in fear of the defendant as opposed to protecting the general population against a more unspecified threat. We hold that the desire of the legislature to protect a citizen who has been victimized and is in fear of further contact from the defendant, who is part of a class of known recidivists, demonstrates an intent to create a civil, regulatory statute.

Defendant points to the fact that the statute is located in Chapter 15A, the "Criminal Procedure Act," after the statute pertaining to restitution and prior to the statute pertaining to probation. "However, placement in a criminal code is not dispositive." *Bowditch*, 364 N.C. at 343, 700 S.E.2d at 7. In *White*, this Court noted that our criminal code "contains many provisions that do not involve criminal punishment." 162 N.C. App. at 193, 590 S.E.2d at 455 (citation and quotation marks omitted). In fact, the No Contact Order at issue, though located in the criminal code, is similar in substance to the civil no-contact order issued pursuant to Chapter 50C. N.C. Gen. Stat. § 50C-5 (2009). Both orders require that the defendant have no contact with the victim or physically harm him or her. *Id.*; N.C. Gen. Stat. § 15A-1340.50(f). The key difference between the two statutes, however, is that N.C. Gen. Stat. § 50C-5 does not require that the victim suffer any physical harm prior to entry of the order, whereas an N.C. Gen. Stat. § 15A-1340.50 order is only entered after the defendant has been convicted of a sex offense. Again, N.C. Gen. Stat. § 15A-1340.50 is specifically intended to protect a victim from sex offenders who quite frequently repeat the unlawful conduct. It is logical, therefore, that the No Contact Order entered after a conviction is placed in the criminal statute, despite its civil regulatory intent. In sum, the location of the statute in the criminal code, while relevant, does not negate its civil intent since "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." *Smith*, 538 U.S. at 86, 155 L. Ed. 2d at 178. We hold that

placement in the criminal code does not demonstrate a legislative intent to utilize a No Contact Order as a criminal punishment.

Defendant also points to the fact that the No Contact Order is enforced by our state's law enforcement agencies pursuant to N.C. Gen. Stat. § 15A-1340.50(g). Defendant claims that the involvement of police evidences a criminal rather than civil intent. Defendant fails to argue who, other than law enforcement, would have the means to enforce the No Contact Order. Clearly, a victim who is being contacted, threatened, visited, assaulted, molested, or otherwise violated would likely need an immediate intervention. Consequently, the only logical choice for enforcement of the No Contact Order is the law enforcement agencies of this state. *See Bowditch*, 364 N.C. at 344, 700 S.E.2d at 7 ("[U]tilizing [the Department of Correction]'s administrative and personnel resources for the SBM program appears to make sound organizational and fiscal sense."). Unlike the SBM program and the registration system, a defendant who is ordered not to contact the victim does not have to follow-up with any government entity. He or she does not have to be monitored or register his or her address. In other words, there is no supervision of the defendant with regard to the No Contact Order. Consequently, if the defendant violates the terms of the order, then there is no one the victim can contact except law enforcement. Moreover, as stated *supra,* the sex offender registration program has been held to be a civil regulatory scheme. A sex offender who fails to register his or her address under that scheme is subject to immediate arrest by law enforcement. N.C. Gen. Stat. § 14-208.11(a1) (2009). Therefore, police enforcement of a civil statute does not automatically render the statute criminal.

Finally, defendant argues that the legislature intended for the statute to be criminal because the statute states that "[t]he no contact order shall be incorporated into the judgment imposing the sentence on the defendant for the conviction of the sex offense." N.C. Gen. Stat. § 15A-1340.50(e). This appears to be a logistical mechanism since the order is entered at the sentencing hearing along with the judgment. Again, there is no follow-up procedure in the statute whereby the defendant is registered or monitored; therefore, the order remains with the defendant's criminal file and is not forwarded to the Division of Criminal Information, the Department of Correction, or the local sheriff for oversight. If a defendant violates the order, he or she is subject to arrest and conviction of a Class A1 misdemeanor. N.C. Gen. Stat. § 15A-1340.50(g). The fact that the order is incorporated with the judgment for ease of enforcement does not render the statute criminal.

In sum, a convicted sex offender is required to register with the State, and, in some instances, ordered to enroll in a SBM program. *White* and *Bowditch* held that these requirements serve a civil regulatory purpose. It is clear that the legislature intended for N.C. Gen. Stat. § 15A-1340.50 to serve as a regulatory tool to protect individuals from recidivist tendencies. *See Bowditch*, 364 N.C. at 344, 700 S.E.2d at 7 (holding that SBM is "another regulatory tool in an effort to defend against an unacceptable threat to public safety").

### B. Effect of the Statute

Next, we must determine whether the statute at issue "is so punitive in purpose or effect that the legislature's civil intent is negated." *Id.* at 344, 700 S.E.2d at 8.

> [T]he following five factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.

*Id.* at 345, 700 S.E.2d at 8 (internal quotation marks omitted). Defendant does not specifically address any of these factors in his brief; however, we must engage in this analysis to determine whether the statute is civil or criminal in its application.

### i. Historical Treatment

"A historical survey can be useful because a State that decides to punish an individual is likely to select a means deemed punitive in our tradition, so that the public will recognize it as such." *Smith*, 538 U.S. at 97, 155 L. Ed. 2d at 180. We fail to see how the No Contact Order is similar in effect to our traditional means of punishment. Defendant is not subjected to confinement by the State, and, unlike parole or probation, which have historically been considered forms of punishment, *Bowditch*, 364 N.C. at 345-46, 700 S.E.2d at 8, defendant is not supervised by the State after entry of the No Contact Order. Defendant's only obligation under the order is to refrain from interacting with the victim in any way.

Our Supreme Court has noted that, historically, punishments have subjected a criminal defendant to shame and public disgrace. *Id.* at 347, 700 S.E.2d at 9. To the extent that the No Contact Order is part of the public record and may bring about some level of public disgrace, "[a]ny shame that [defendant] may experience results from his

previous conviction, not from disclosure of that fact to the public. Indeed, [defendant's] conviction and sentence is already a matter of public record." *State v. Mount*, 78 P.3d 829, 838 (Mont. 2003).

### ii. Affirmative Restraint or Disability

To determine whether the No Contact Order imposes an affirmative disability or restraint, we must consider "how the effects of [the order] are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Smith*, 538 U.S. at 99-100, 155 L. Ed. 2d at 181. In applying this test, our Supreme Court stated in *Bowditch*, "[t]here is no denying that being subjected to SBM has an impact on the lives of its participants. Yet, when viewed in light of other civil, regulatory schemes, we cannot conclude that the effects of SBM transform it into criminal punishment." 364 N.C. at 348, 700 S.E.2d at 10. The Court then compared the restraints on the defendant to other civil regulatory schemes, such as occupational debarment and post-incarceration involuntary confinement, and found the restraints of SBM to be "no more onerous[.]" *Id.* at 349-50, 700 S.E.2d at 10-11. While defendant is not allowed to contact his victim, we cannot say that this restriction is more onerous than the requirements of occupational debarment, involuntary commitment, or SBM. In fact, the disability or restraint in this circumstance is quite minor compared to the requirements of SBM where activities such as bathing, swimming, and travelling by airplane are limited by the monitoring device. *Id.* at 350, 700 S.E.2d at 11. Defendant is not required to appear before law enforcement, register his address with the sheriff, or wear a monitoring device; he must simply refrain from contacting his victim. We hold that the effects of the No Contact Order at issue in this case are minor and indirect, and, therefore, the effects are not punitive.

### iii. Traditional Aims of Punishment

Next, we must determine if the No Contact Order promotes the traditional aims of punishment. "Retribution and deterrence are the two primary objectives of criminal punishment." *Id.* at 351, 700 S.E.2d at 12 (citation and quotation marks omitted). As stated *supra*, the No Contact Order, like the SBM and registration programs, "is concerned with protecting the public against recidivist tendencies of convicted sex offenders. Thus, the fact that it applies only to individuals convicted of prior criminal conduct is consistent with its regulatory purpose and not indicative of a retributive nature." *Id.* Regarding deterrence, the No Contact Order may have a deterrent effect since

defendant knows that any further assault on his victim will likely lead to arrest. Nevertheless, "[a]ny number of governmental programs might deter crime without imposing punishment. To hold that the mere presence of a deterrent purpose renders such sanctions criminal . . . would severely undermine the Government's ability to engage in effective regulation." *Smith*, 538 U.S. at 102, 155 L. Ed. 2d at 183 (internal quotation marks omitted). Consequently, we hold that the No Contact Order does not promote the traditional aims of punishment such that the statute is rendered punitive.

### iv. Rational Connection to a Nonpunitive Purpose

The Supreme Court in *Smith* noted that whether a statute has a rational connection to a nonpunitive purpose was the most significant factor in its analysis. *Id.* at 102, 155 L. Ed. 2d at 183. There is no dispute in this case that the No Contact Order has a rational connection to a nonpunitive purpose—protection of a sexual assault victim from further contact or molestation by her assailant.

### v. Excessiveness with Respect to Purpose

Finally, we must examine whether the No Contact Order is excessive with respect to purpose. We hold that it is not.

"This inquiry 'is not an exercise in determining whether the legislature has made the best choice possible to address the problem' but 'whether the regulatory means chosen are reasonable in light of the nonpunitive objective.' " *Bowditch*, 364 N.C. at 351-52, 700 S.E. 2d at 12 (quoting *Smith*, 538 U.S. at 105, 155 L. Ed. 2d at 185). Here, the statute is reasonable "compared to the unacceptable risk against which it seeks to protect." *Id.* at 352, 700 S.E.2d at 12. Those defendants subject to a No Contact Order have committed sexual offenses against their victims. N.C. Gen. Stat. § 15A-1340.50(a). Imposition of the No Contact Order is limited to situations where the victims have expressed a reasonable fear of future contact from their attackers. N.C. Gen. Stat. § 15A-1340.50(e). In other words, not every defendant who has committed a sexual offense is automatically subject to a No Contact Order. The statute is quite narrow.

Moreover, a defendant may make a motion at any time to rescind a No Contact Order and the trial court may grant the motion if it "determines that reasonable grounds for the victim to fear any future contact with the defendant no longer exist[.]" N.C. Gen. Stat. § 15A-1340.50(h). Accordingly, the statute's "reasonableness is supported by its limited application and its potentially limited duration."

*Bowditch*, 364 N.C. at 352, 700 S.E.2d at 12 (analyzing the reasonableness of SBM); *see White*, 162 N.C. App. at 197, 590 S.E.2d at 457 ("Since North Carolina only requires registration [for sex offenders] for ten years, . . . we hold that the registration requirements are not excessive in light of the General Assembly's nonpunitive objective." (internal citation omitted)). We hold that N.C. Gen. Stat. § 15A-1340.50 is not excessive with respect to purpose.

Based on the foregoing, we hold that the legislature intended for N.C. Gen. Stat. § 15A-1340.50 to serve as a civil remedy and that the effects of the law do not negate its civil intent. The requirement that defendant have no contact with the person he victimized is not, therefore, a punishment as contemplated by N.C. Const. art. XI, § 1.

### III. Due Process

**[3]** Next, defendant argues that his constitutional right to due process of law was violated because the State did not provide him with notice that it intended to seek the No Contact Order. Defendant claims that the statute is unconstitutional on its face and as applied to defendant. Defendant did not object at the sentencing hearing on due process grounds; however, to the extent that this argument was not preserved, we decide, in our discretion, to review it pursuant to N.C. R. App. P. 2 (2012).

The Fifth and Fourteenth Amendments to our federal Constitution guarantee that the State shall not deprive any person of "life, liberty, or property without due process of law." "Once a protected life, liberty, or property interest has been demonstrated, the Court 'must inquire further and determine exactly what procedure or process is due.'" *State v. Stines*, 200 N.C. App. 193, 196, 683 S.E.2d 411, 413 (2009) (quoting *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998) (internal quotation marks omitted)). Assuming, *arguendo*, that a protected liberty interest is at stake, we hold that defendant was not entitled to prior notice by the State that it would seek the No Contact Order at the sentencing hearing.

N.C. Gen. Stat. § 15A-1340.50 does not contain a notice requirement. Nevertheless, a criminal defendant is made aware by the statute that he or she may be subject to the mandates of a No Contact Order if he or she is convicted of a reportable sex offense and the victim has a reasonable fear of future contact from the defendant. N.C. Gen. Stat. § 15A-1340.50(a)(3), (e). The defendant is further made aware that the proceedings for a No Contact Order occur at

sentencing upon request by the district attorney. N.C. Gen. Stat. § 15A-1340.50(b). Defendant cannot claim that he was unaware that this statute was in effect at the time he was convicted and sentenced and that there was a possibility that he would be asked to show cause why the No Contact Order should not be entered. *See Texaco, Inc. v. Short*, 454 U.S. 516, 532, 70 L. Ed. 2d 738, 752 (1982) ("Generally a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply."); *State v. Bryant*, 359 N.C. 554, 566, 614 S.E.2d 479, 486 ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." (quoting *Cheek v. United States*, 498 U.S. 192, 199, 112 L. Ed. 2d 617, 628 (1991)).

Again, we find guidance on this issue in our Court's examination of the SBM statutory scheme, and we find *State v. Jarvis*, ____ N.C. App. ____, 715 S.E.2d 252 (2011), to be on point. There, this Court interpreted N.C. Gen. Stat. § 14–208.40A (2009), and held that the defendant's due process rights were not violated where the statute permitted the trial court to order the defendant to enroll in SBM at the sentencing hearing. *Jarvis*, ____ N.C. App. at ____, 715 S.E.2d at 258. The defendant was not given advance notice that a SBM hearing would take place at sentencing, but he was given the opportunity to be heard and present evidence to refute the State's claim that he was eligible for SBM. *Id.* We find the procedural application of N.C. Gen. Stat. § 14–208.40A to be analogous to N.C. Gen. Stat. § 15A-1340.50.

Defendant relies heavily on *Stines* to support his position that advance notice by the State was required. However, *Stines* is readily distinguishable. In *Stines*, we examined N.C. Gen. Stat. § 14–208.40B (2009), which required the State to notify an individual who is not incarcerated, but potentially subject to SBM, to report to court for a SBM hearing. We held that the notice requirement of N.C. Gen. Stat. § 14–208.40B requires the State to inform the defendant that the Department of Correction has determined that he or she falls into one of the specific categories of sex offenders listed in N.C. Gen. Stat. § 14–208.40(a) (2009). *Stines*, 200 N.C. App. at 199, 683 S.E.2d at 415. The obvious distinction between N.C. Gen. Stat. § 14–208.40A, as interpreted by *Jarvis*, and N.C. Gen. Stat. § 14–208.40B, as interpreted by *Stines*, is that a defendant is not afforded notice of a hearing where the hearing is conducted during sentencing after a conviction, whereas a defendant who is being brought back for a hearing after release from incarceration is required to be provided detailed notice

by the State regarding why he or she is being hailed to court. Based on our holding in *Jarvis*, we hold that N.C. Gen. Stat. § 15A-1340.50 does not require the State to give defendant notice that it intended to seek the No Contact Order, and this lack of notice does not violate defendant's right to due process of law. The statute is not, therefore, unconstitutional on its face or as applied to defendant.

## IV. Double Jeopardy

[4] Defendant argues that his right to be free from double jeopardy was violated when the trial court sentenced him to a term of imprisonment and subjected him to the No Contact Order. To the extent that defendant did not preserve this argument due to his failure to object at sentencing, we review the argument pursuant to N.C.R. App. P. 2 (2012). Because N.C. Gen. Stat. § 15A-1340.50 constitutes a civil remedy, we hold that imposition of a No Contact Order does not implicate the constitutional protection against double jeopardy. *See State v. Williams*, ____ N.C. App. ____, ____, 700 S.E.2d 774, 777-78 (2010) (recognizing that double jeopardy does not apply where a defendant is subject to a civil remedy as opposed to a criminal punishment).

## V. Statutory Procedure for Imposition of the No Contact Order

[5] Defendant argues that even if his constitutional rights were not violated, the trial court nevertheless erred by failing to hold a hearing, make findings of fact, or enter grounds for entering the order. We disagree.

N.C. Gen. Stat. § 15A-1340.50(b) states that upon a request from the district attorney for the trial court to enter a No Contact Order, "[t]he judge shall order the defendant to show cause why a permanent no contact order shall not be issued and shall hold a show cause hearing as part of the sentencing procedures for the defendant." We do not interpret this statute to mean that the trial court must delineate the sentencing hearing from the show cause hearing. In other words, the trial court need not suspend the sentencing hearing and hold a separate show cause hearing. In the present case, the district attorney requested that the No Contact Order be entered and defendant was given the opportunity to show cause why it should not be entered. Defendant chose to remain silent on that matter. We hold that the trial court sufficiently complied with the statute.

N.C. Gen. Stat. § 15A-1340.50(e) also requires the trial court to enter written findings of fact and grounds for entering the order. The trial court did so in this case. As detailed *supra*, the trial court made

**TOPP v. BIG ROCK FOUND.**

[221 N.C. App. 64 (2012)]

four findings of fact and listed two grounds for entering the order. Defendant claims that the trial court did not properly find that he was convicted of a reportable sex offense because the court incorporated form AOC-CR-615, which had not been completed at that time. The fact that the form was not complete and defendant had not yet been ordered to register or enroll in SBM does not negate the fact that the trial court determined that defendant had been "convicted of a criminal offense requiring registration under Article 27A of Chapter 14 of the General Statutes[.]" Defendant's argument is without merit. We hold that the trial court complied with the statutory framework set forth in N.C. Gen. Stat. § 15A-1340.50 when it entered the No Contact Order.

## Conclusion

In sum, we hold that N.C. Gen. Stat. § 15A-1340.50 constitutes a civil remedy as opposed to a criminal punishment. Defendant's constitutional rights were not violated in this case. We further hold that the trial court followed the statutory mandates when entering the No Contact Order. Accordingly, we affirm the trial court's Convicted Sex Offender Permanent No Contact Order.

Affirmed.

Chief Judge MARTIN and Judge STEPHENS concur.