IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-200

 Filed: 19 January 2016

Rockingham County, No. 13 CRS 51545, 51698, 1307-1308

STATE OF NORTH CAROLINA

 v.

JAMES ANTHONY BARNETT, JR.

 Appeal by Defendant from judgments entered 16 July 2014 by Judge Edwin G.

Wilson in Rockingham County Superior Court. Heard in the Court of Appeals 23

September 2015.

 Attorney General Roy Cooper, by Special Deputy Attorney General Iain M.
 Stauffer, for the State.

 Brendan O’Donnell, Assistant Public Defender, and Jennifer Harjo, Public
 Defender, for Defendant.

 INMAN, Judge.

 Defendant James Anthony Barnett, Jr. (“Defendant”) appeals the judgments

entered after a jury convicted him of attempted second degree rape, two counts of

deterring an appearance by a witness, and assault on a female. Defendant also

appeals the postconviction orders entered imposing lifetime satellite-based

monitoring (“SBM”), lifetime sex offender registration, and a permanent no contact

order. On appeal, Defendant argues that: (1) his convictions for deterring a witness

by threats were not supported by legally sufficient evidence; (2) the trial court
 STATE V. BARNETT

 Opinion of the Court

committed plain error when instructing on the charges of deterring a witness; (3) the

habitual misdemeanor assault indictment was fatally defective; (4) the trial court

erred in finding that attempted second degree rape is an aggravated offense requiring

lifetime SBM and sex offender registration; and (5) the trial court lacked authority to

enter a permanent no contact order prohibiting Defendant from contacting the

victim’s children.

 After careful review, we conclude that Defendant received a trial free from

error. However, we reverse the trial court’s order imposing lifetime SBM and reverse

and remand the lifetime sex offender registration order for entry of an order

consistent with this opinion. We also vacate the permanent no contact order and

remand for entry of an order consistent with this opinion.

 Background

 The State’s evidence introduced at trial tended to show the following: In late

January 2013, Winnie Johnson (“Ms. Johnson” or “the victim”)1 met Defendant on a

call-in chat line. They began dating shortly thereafter. On or about 29 January 2013,

Defendant was taken into custody and incarcerated at the Alamance County jail for

a matter unrelated to this appeal. Following Defendant’s release from jail on 14

March 2013, Defendant moved into Ms. Johnson’s apartment in Eden, North

 1 A pseudonym has been used to protect the identity of the victim.

 -2-
 STATE V. BARNETT

 Opinion of the Court

Carolina. The victim’s three daughters, then aged 13, 10, and almost 1, also lived in

the apartment.

 On or about 22 April 2013, Defendant left the apartment to go to Burlington to

meet with his probation officer. While he was away, Ms. Johnson called him to say

that she no longer wanted to date him. Although they were in contact via phone and

text and Defendant repeatedly requested that Ms. Johnson bring him his clothes,

they did not see each other until 22 May 2013, when Defendant showed up at Ms.

Johnson’s apartment door. Ms. Johnson let Defendant inside. Defendant asked Ms.

Johnson to get his clothes, and Ms. Johnson asked him to wait in the living room

while she retrieved them.

 When Ms. Johnson returned to the living room with Defendant’s clothes,

Defendant asked for a hug, and Ms. Johnson obliged. Defendant asked Ms. Johnson

to engage in sexual intercourse. She repeatedly refused and asked Defendant to

leave. Ms. Johnson left the living room and walked down the hall and into a bathroom

“to kill time.” Defendant followed her to the bathroom and stood outside the door.

When Ms. Johnson tried to leave the bathroom, Defendant blocked her way, pushed

her into a bedroom, threw her onto the floor and then onto a bed, and began trying to

have sexual intercourse with her while repeatedly hitting her in the head and face.

 Defendant testified at trial and denied trying to rape Ms. Johnson, but he

admitted he “pushed her,” “grabbed her by her waist,” “punched her in the back of

 -3-
 STATE V. BARNETT

 Opinion of the Court

the head,” and hit her several more times. Defendant testified that he stopped hitting

Ms. Johnson and left her home once she promised she would not have sex with anyone

else.

 Ms. Johnson testified that before leaving her apartment, Defendant said he

would kill her if she called the police. Ms. Johnson then asked a neighbor to call 911.

The responding officer testified that when he arrived, Ms. Johnson was crying,

disheveled, and had “severe bruises” on her face and body and “a lot of swollen . . .

lumps on her head.” Ms. Johnson was treated and released from the hospital the

same day. She testified that following her release from the hospital, she immediately

began receiving text messages from Defendant which included threats to kill her.

 Defendant was arrested on 29 May 2013 and charged with assault, kidnapping,

and rape. After being taken into custody, Defendant began sending Ms. Johnson

threatening letters from jail. Details of those letters are discussed in the relevant

sections below.

 On 8 July 2013, Defendant was indicted on one count of attempted second

degree rape, one count of second degree kidnapping, two counts of deterring an

appearance by a witness, one count of assault on a female, one count of habitual

misdemeanor assault, and having attained habitual felon status. On 16 July 2014, a

jury convicted Defendant of attempted second degree rape, two counts of deterring an

appearance by a witness, and assault on a female. Defendant admitted the prior

 -4-
 STATE V. BARNETT

 Opinion of the Court

misdemeanor assaults underlying the habitual misdemeanor assault charge and pled

guilty to habitual felon status.

 The trial court sentenced Defendant to two consecutive terms of 110 to 144

months imprisonment. It also ordered Defendant to register as a sex offender and

enroll in SBM for life, and permanently prohibited Defendant from communicating

with Ms. Johnson or her three children.

 Defendant gave notice of appeal in open court.

 Analysis

I. Sufficiency of Evidence of Deterring a Witness

 Defendant first argues that the trial court improperly denied his motions to

dismiss the charges of deterring a witness by threats. According to Defendant, the

convictions were not supported by legally sufficient evidence because “the [victim]

was pressured to stay away from court without any threats,” or in the alternative,

because to the extent that any threats were made, “they related to the parties’

personal relationship and not to [this case].” These arguments are without merit.

 A trial court’s denial of a motion to dismiss is reviewed de novo. State v. Smith,

186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "When considering a motion to

dismiss, the trial court must determine whether there is sufficient evidence of each

essential element of the offenses charged. . . . If there is sufficient evidence to submit

the case to the jury, the motion to dismiss must be denied." State v. Wade, 181 N.C.

 -5-
 STATE V. BARNETT

 Opinion of the Court

App. 295, 299, 639 S.E.2d 82, 86 (2007) (citation omitted). The evidence must be

viewed “in the light most favorable to the State, giving the State the benefit of all

reasonable inferences,” State v. Fritsch, 351 N.C. 373, 378-79, 526 S.E.2d 451, 455

(2000), and “resol[ve] any contradictions in [the State’s] favor,” State v. Greenlee, 227

N.C. App. 133, 136, 741 S.E.2d 498, 500 (2013) (internal quotation marks and citation

omitted).

 N.C. Gen. Stat. § 14-226(a) provides that a defendant is guilty of intimidating

or interfering with a witness if

 by threats, menaces or in any other manner [the
 defendant] intimidate[s] or attempt[s] to intimidate any
 person who is summoned or acting as a witness in any of
 the courts of this State, or prevent[s] or deter[s], or
 attempt[s] to prevent or deter any person summoned or
 acting as such witness from attendance upon such court.

On appeal, Defendant contends that his motion to dismiss should have been granted

because: (1) the two letters introduced at trial to support the first count of deterring

a witness did not contain any threats; (2) there was no evidence “presented at trial as

to the particular court case in which [Ms. Johnson] had been summoned” which was

identified in the first count as 13 CR 51545; (3) there was no evidence presented at

trial that Defendant attempted to deter Ms. Johnson from acting as a witness in 13

CR 51698, the case identified in the second count of the indictment; and (4) the dates

of offense listed on the indictments did not accurately state the dates of the letters

sent to Ms. Johnson and her daughter that contained the threats.

 -6-
 STATE V. BARNETT

 Opinion of the Court

 At trial, the State introduced eight letters that Defendant wrote to Ms.

Johnson or one of her daughters between 31 May 2013 and 4 August 2013, including

one postmarked 4 June 2013 (the date cited in the first count of deterring or

attempting to deter a witness) and one postmarked 20 June 2013 (the dated cited in

the second count). Excerpts from the two letters specifically referenced in the

indictment and other letters include language that, in light of the evidence at trial, a

reasonable juror could interpret as threatening or attempting to threaten Ms.

Johnson to prevent her from appearing in court.

 A. Count I

 Ms. Johnson testified at trial that before leaving her home on the day of the

assault and attempted rape, Defendant threatened to kill her if she called the police.

Defendant reminded her of that threat in a letter postmarked 4 June 2013.

Defendant wrote to Ms. Johnson:

 What did I tell you, [sic] would happen, if you took charges;
 [sic] out on me? You remember what I told you. And I’ma
 [sic] stand by my word. Because you knew not to press
 charges or go to the hospital. You knew better then [sic]
 that. Then on top of all that, you lied to the police; about
 what happen. These charges are fake as hell. Then you
 saying that I raped you or attempted to rape you.

Later in that letter, Defendant wrote: “I miss you deeply and love you like crazy. You

are not just going to walk, [sic] away from me this easily. Because before you do so,

I will kill you or have you killed.” Construing this letter with Defendant’s earlier

 -7-
 STATE V. BARNETT

 Opinion of the Court

threats, a jury could reasonably interpret this letter to constitute a threat of bodily

harm or death against Ms. Johnson while she was acting as a witness for the

prosecution.

 Defendant also contends that the State had to prove the specific court

proceeding that he attempted to deter Ms. Johnson from attending since the case

number was listed in the indictment. We disagree because the specific case number

identified in the first count, 13 CR 51545, is irrelevant information not necessary to

support an essential element of the crime. See State v. Taylor, 280 N.C. 273, 276, 185

S.E.2d 677, 680 (1972) (“Allegations beyond the essential elements of the crime

sought to be charged are irrelevant and may be treated as surplusage. The use of

superfluous words should be disregarded.”).

 The essential elements of the offense of deterring a witness are that the

defendant threatens, menaces, or in any other manner: (1) intimidates or attempts to

intimidate a person who is summoned or acting as a witness in any state court, or (2)

prevents, deters, or attempts to prevent or deter a person who is summoned or acting

as a witness. N.C. Gen. Stat. § 14-226(a).

 The indictment stated:

 The jurors for the State upon their oath present that on or
 about the dates of offense shown and in the county named
 above the defendant named above unlawfully, willfully and
 feloniously did by threats attempt to deter and attempt to
 prevent [Ms. Johnson] from attending court by threatening
 to kill her if she appeared. [Ms. Johnson] was summoned

 -8-
 STATE V. BARNETT

 Opinion of the Court

 as a witness in Rockingham County District Court, Case
 Number 13CR51545.

Because the indictment charged the “summoned” or “acting as a witness” element by

stating that Ms. Johnson had been summoned as a witness in a state court, the actual

court number of the case listed is merely surplusage and irrelevant. See generally

State v. Huckelba, __ N.C. App. __, __, 771 S.E.2d 809, 826 (2015) (concluding that

the indictment language identifying the physical address of High Point University

was surplusage where the indictment alleged all the essential elements of the crime:

that the defendant knowingly possessed a pistol on educational property, High Point

University), rev’d per curiam on other grounds, __ N.C. __ (No. 156A15), 2015 WL

9265789, at *1 (Dec. 18, 2015) (reversing based solely on the defendant’s failure to

establish plain error in the jury instructions). Furthermore, the language of the letter

clearly indicates that Defendant was trying to prevent Ms. Johnson from further

prosecuting the charges arising from the May 2013 incident. Therefore, the

duplicative information about the actual court case Ms. Johnson was being

summoned to be a witness for was surplusage and was not a fact which the State was

required to allege and prove. See State v. Springer, 283 N.C. 627, 637, 197 S.E.2d

530, 537 (1973).

 B. Count II

 In a letter to Ms. Johnson postmarked 20 June 2013, the date of the offense

listed in the second count of the indictment for deterring a witness, Defendant

 -9-
 STATE V. BARNETT

 Opinion of the Court

reiterated, “You know what I told you, before I left your house.” In that same letter,

Defendant told Ms. Johnson twice not to come to court on 25 June 2013, and

referenced “order[ing] [his] hits.” In his 20 June 2013 letter to one of Ms. Johnson’s

daughters, Defendant said if Ms. Johnson did not drop the charges against him he

would “order some things to happen which means I will never get out of prison again.

. . . I will never see the courtroom. And neither will your mama. She will be dead

because of my orders.” In that same letter, Defendant wrote, “Get your mama not to

come to court, on Tuesday June 25, 2013.”

 Defendant’s other letters to Ms. Johnson make clear that “ordering a hit” was

a threat to murder her. Defendant wrote that he would “put [her] below before [she

could put him] away for X amount of years” and threatened to “send [his] lil CRIP

homies at [her and her] family.”

 In the instant case, the State presented ample evidence of threats made by

Defendant to inflict bodily harm on Ms. Johnson, a prospective witness in the case

against him. See State v. Williams, 186 N.C. App. 233, 237, 650 S.E.2d 607, 609-10

(2007). Moreover, the fact that Ms. Johnson and her daughter did not receive these

letters is irrelevant because the crime of deterring a witness may be shown by actual

intimidation or attempts at intimidation. See N.C. Gen. Stat. § 14-226(a).

Furthermore, as discussed above, the specific case number of the court case Ms.

Johnson was acting as a witness for was surplusage and was not a necessary

 - 10 -
 STATE V. BARNETT

 Opinion of the Court

evidentiary showing that the State was required to make. Accordingly, we hold that

the trial court did not err in denying Defendant’s motion to dismiss these charges.

II. Jury Instructions on Deterring a Witness

 Defendant next argues that the trial court committed plain error in its jury

instructions on the charges of deterring a witness. Defendant challenges the trial

court’s failure to include the word “threat” in one of its deterring a witness

instructions, its failure to repeat the deterring a witness instructions in their entirety

for each of the two charges, and its failure to instruct the jury that it must find

Defendant deterred Ms. Johnson from appearing in case nos. 13 CR 51545 and 51698,

the specific case numbers identified in the indictments. We disagree.

 For error to constitute plain error, a defendant must
 demonstrate that a fundamental error occurred at trial. To
 show that an error was fundamental, a defendant must
 establish prejudice—that, after examination of the entire
 record, the error had a probable impact on the jury's
 finding that the defendant was guilty.

State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal quotation

marks omitted).

 The two counts of deterring a witness involved identical legal elements. In

explaining these charges, the trial court instructed the jury that in order to find

Defendant guilty of deterring a witness under N.C. Gen. Stat. § 14-226, it must find

three essential elements beyond a reasonable doubt, including that Defendant “did

 - 11 -
 STATE V. BARNETT

 Opinion of the Court

so by threats.” The trial court omitted this part of the instruction in its final mandate

on the two charges. Instead, the trial court instructed that

 if you find from the evidence beyond a reasonable doubt
 that on or about the alleged date a person was summoned
 as a witness in a court of this state, and that the defendant
 intentionally attempted to prevent or -- attempted to deter
 or deterred that witness from attending court, it would be
 your duty to return a verdict of guilty.

Defendant contends that this omission constituted plain error.

 In light of the trial court’s thorough instructions on the elements of these

charges, this argument is without merit. “Where the instructions to the jury, taken

as a whole, present the law fairly and clearly to the jury, [the reviewing Court] will

not find error even if isolated expressions, standing alone, might be considered

erroneous.” State v. Morgan, 359 N.C. 131, 165, 604 S.E.2d 886, 907 (2004) (emphasis

added). Further, applying the plain error standard, Defendant has failed to show

that the trial court’s single omission of the word “threat” in one instruction had a

probable impact on the jury’s verdict.

 Defendant also argues that the trial court erred by not reading the entire

instruction for each separate charge of deterring a witness, instead telling the jury:

 [T]he defendant has been charged with two counts of
 deterring the appearance by a witness. It’s the same–the
 law is the same on both counts. I’m not going to read it
 twice. The first count is the one simply that was alleged to
 have occurred on June 4, 2013, and the second is the one
 that is alleged to have occurred on June 20, 2013.

 - 12 -
 STATE V. BARNETT

 Opinion of the Court

Again, evaluated in the context of all the instructions on the charges of deterring a

witness, Defendant has failed to show plain error. The trial court repeatedly

instructed the jury that there were two separate charges, to be considered

individually, and accurately instructed that the necessary elements for both charges

were identical. He also properly instructed the jury that the only difference was the

date of offense. Thus, construing these instructions in their entirety, the trial court

did not err by not repeating the instructions verbatim.

 Finally, Defendant argues that the trial court committed plain error by not

instructing the jury that it must find Defendant deterred Ms. Johnson from appearing

in the specific cases listed in the indictment. As discussed above, the actual court

case Ms. Johnson was being summoned to be a witness for was surplusage and not

an element of the offense. See Springer, 283 N.C. at 637, 197 S.E.2d at 537. Thus,

the trial court did not commit error, much less plain error, by failing to mention the

specific case numbers.

III. Sufficiency of the Habitual Misdemeanor Assault Indictment

 Defendant argues that the second count in the indictment for habitual

misdemeanor assault failed to allege all the elements of habitual misdemeanor

assault because it did not recite all the elements of the offense. We disagree, because

the first count in the indictment, alleging misdemeanor assault, alleged all necessary

 - 13 -
 STATE V. BARNETT

 Opinion of the Court

elements of the habitual offense except for the existence of Defendant’s prior

convictions.

 “This Court reviews challenges to the sufficiency of an indictment using a de

novo standard of review.” State v. Pendergraft, __ N.C. App. __, __, 767 S.E.2d 674,

679 (2014).

 The indictment for 13 CR 1307 included two counts: (1) assault on a female

under N.C. Gen. Stat. § 14-33; and (2) habitual misdemeanor assault under N.C. Gen.

Stat. § 14-33.2. Defendant’s indictment for misdemeanor assault specifically alleged

that Defendant (1) assaulted a female person, (2) “caused physical injury to the

victim, [specifically] bruises to her head and face,” and (3) was a male at least 18

years of age, and Defendant does not dispute that the first count of the indictment

properly alleged all elements of assault on a female under N.C. Gen. Stat. § 14-33.

Instead, Defendant contends that the second count of the indictment fails to properly

allege habitual misdemeanor assault because it did not include “two critical

elements”: (1) a violation of N.C. Gen. Stat. § 14-33, and (2) a physical injury.

Consequently, Defendant contends that the trial court lacked subject matter

jurisdiction to enter judgment for habitual misdemeanor assault.

 A defendant is guilty of habitual misdemeanor assault, a Class H felony, if

 that person violates any of the provisions of G.S. 14-33 and
 causes physical injury, or G.S. 14-34, and has two or more
 prior convictions for either misdemeanor or felony assault,
 with the earlier of the two prior convictions occurring no

 - 14 -
 STATE V. BARNETT

 Opinion of the Court

 more than 15 years prior to the date of the current
 violation.

N.C. Gen. Stat. § 14-33.2. For purposes of Defendant’s habitual misdemeanor assault

charge, the lower grade offense of assault on a female becomes an element of a higher

grade offense. See State v. Burch, 160 N.C. App. 394, 396, 585 S.E.2d 461, 463 (2003).

Thus, to prove Defendant guilty of habitual misdemeanor assault, the State was

required to prove the following elements: (1) Defendant was convicted of two

misdemeanor assaults, specifically the assaults listed in Count II of the indictment

(the 9 September 1999 assault on a government official and the 5 April 2007 assault

on a female); (2) Defendant assaulted Ms. Johnson on 22 May 2013, as alleged in

Count I of the indictment; and (3) the assault on Ms. Johnson caused physical injury,

also alleged in Count I of the indictment.

 At the outset, we address the applicability of a N.C. Gen. Stat. § 15A-928

“special accompanying indictment” for a charge of habitual misdemeanor assault.

Even though the language of subsection (a) of N.C. Gen. Stat. § 15A-928 appears to

limit its applicability to status offenses, this Court has repeatedly concluded that

substantive habitual offenses, such as habitual misdemeanor assault and habitual

impaired driving, are likewise governed by Chapters 15A and 20, including N.C. Gen.

Stat. § 15A-928, unlike habitual status offenses, which are governed by Chapter 14.

Id.; see also State v. Williams, 153 N.C. App. 192, 194, 568 S.E.2d 890, 892 (2002)

(noting that to properly charge a defendant with felony misdemeanor assault, the

 - 15 -
 STATE V. BARNETT

 Opinion of the Court

prosecutor may use a “special accompanying indictment” pursuant to N.C. Gen. Stat.

§ 15A-928(b)).

 It is undisputed that Count I of the indictment properly alleged all of the

elements of assault on a female, a violation of N.C. Gen. Stat. § 14-33, and included

the element that Ms. Johnson suffered physical injury as a result. However, Count

II of the indictment, which charged Defendant with habitual misdemeanor assault

and properly referenced Defendant’s two prior misdemeanor assaults that occurred

less than 15 years prior to the date of his current violation, did not include any

language regarding Defendant’s current charge of assault on a female resulting in a

physical injury, a necessary showing for a N.C. Gen. Stat. § 14-33.2 violation.

Consequently, Defendant contends that the habitual misdemeanor assault

indictment was “fatally defective” for failing to allege all the necessary elements of

habitual misdemeanor assault.

 This Court rejected arguments similar to Defendant’s in State v. Lobohe, 143

N.C. App. 555, 547 S.E.2d 107 (2001), and that decision is controlling in this case. In

Lobohe, 143 N.C. App. at 558-59, 547 S.E.2d at 109-10, the defendant was indicted

for one count of impaired driving and a second count of habitual impaired driving.

The first count alleged all elements of impaired driving, and the second count alleged

the defendant’s three prior convictions. Id. The defendant argued the second count

was fatally defective because it failed to allege all statutory elements of habitual

 - 16 -
 STATE V. BARNETT

 Opinion of the Court

impaired driving2 as required by N.C. Gen. Stat. 15A-924, which provides in part that

a criminal indictment must contain “[a] plain and concise factual statement in each

count . . . supporting every element of a criminal offense and the defendant’s

commission thereof . . . .” N.C. Gen. Stat. 15A-924(a)(5). This Court rejected that

argument, noting that the statute also provides that “[i]n trials in superior court,

allegations of previous convictions are subject to the provisions of G.S. 15A–928.”

Lobohe, 143 N.C. App. at 558, 547 S.E.2d at 109; N.C. Gen. Stat. 15A-924(c). In turn,

section 15A-928 provides in pertinent part:

 (a) When the fact that the defendant has been previously
 convicted of an offense raises an offense of lower grade to
 one of higher grade and thereby becomes an element of the
 latter, an indictment or information for the higher offense
 may not allege the previous conviction. If a reference to a
 previous conviction is contained in the statutory name or
 title of the offense, the name or title may not be used in the
 indictment or information, but an improvised name or title
 must be used which labels and distinguishes the offense
 without reference to a previous conviction.

 (b) An indictment or information for the offense must be
 accompanied by a special indictment or information, filed
 with the principal pleading, charging that the defendant
 was previously convicted of a specified offense. At the
 prosecutor's option, the special indictment or information
 may be incorporated in the principal indictment as a
 separate count.

 2 “A person commits the offense of habitual impaired driving if he drives while impaired . . .
and has been convicted of three or more offenses involving impaired driving . . . within 10 years of the
date of this offense.” N.C. Gen. Stat. § 20-138.5(a).

 - 17 -
 STATE V. BARNETT

 Opinion of the Court

N.C. Gen. Stat. 15A-928(a)-(b).

 We concluded in Lobohe that the indictment for habitual impaired driving

complied with the requirements of both 15A-924 and 15A-928. The first count,

impaired driving, did not allege the defendant’s prior convictions, as required by 15A-

928(a). Id. at 558, 547 S.E.2d at 109. The second count, which was “contained as a

separate count in the principal indictment as permitted by section 15A–928(b),”

alleged the defendant’s prior convictions. Id. This “follow[ed] precisely the required

format set forth in section 15-928.” Id. This Court explicitly rejected the defendant’s

argument that “an indictment which complies with section 15A–928 is in violation of

section 15A–924 because it does not contain in one count the elements of impaired

driving as well as the elements which elevate the offense of impaired driving to that

of habitual impaired driving.” Id.at 559, 547 S.E.2d at 109.

 Following Lobohe, we conclude that Defendant’s indictment for habitual

misdemeanor assault complied with sections 15A-924 and 15A-928.3 The

indictment’s first count, misdemeanor assault, properly alleged all elements,

including “caus[ing] physical injury to the victim.” It did not mention Defendant’s

prior assault convictions, as required by § 15A-928(a). The second count, habitual

misdemeanor assault, alleged that “the defendant has been previously convicted of

 3 We note that habitual misdemeanor assault, like habitual impaired driving, is a substantive
offense. Lobohe, 143 N.C. App. at 559, 547 S.E.2d at 110; State v. Smith, 139 N.C. App. 209, 213-14,
533 S.E.2d 518, 519-20 (2000).

 - 18 -
 STATE V. BARNETT

 Opinion of the Court

two or more misdemeanor assaults” in violation of N.C. Gen. Stat. § 14-33.2 and listed

the dates of those prior convictions. The latter charge was included “as a separate

count in the principal indictment as permitted by section 15A–928(b),” see Lobohe,

143 N.C. App. at 558, 547 S.E.2d at 109. Accordingly, the indictment was sufficient,

and the trial court did not lack subject matter jurisdiction over the habitual assault

charge.

IV. Imposition of Lifetime Satellite-Based Monitoring and Sex Offender
Registration and Entry of Permanent No Contact Order

 Defendant next argues that the trial court violated various statutory

provisions by imposing lifetime SBM, lifetime sex offender registration, and a

permanent no contact order that included the victim’s family members. Because

Defendant failed to give written notice of appeal from any of these orders, he seeks

review by petition for writ of certiorari and, with respect to two of the orders, the

State concedes error. Given these circumstances, we will allow the petition and

review these orders.

 Defendant’s arguments allege statutory errors which we review de novo. State

v. Mackey, 209 N.C. App. 116, 120, 708 S.E.2d 719, 721 (2011) (internal citation

omitted).

 A. Lifetime SBM and Sex Offender Registration

 Defendant argues, and the State concedes, that the trial court erroneously

concluded that attempted second degree rape is an aggravated offense under N.C.

 - 19 -
 STATE V. BARNETT

 Opinion of the Court

Gen. Stat. § 14-208.6(1a) and, in doing so, violated N.C. Gen. Stat. § 14-208.40A (SBM

statute) and N.C. Gen. Stat. §§ 14-208.7 and 14-208.23 (sex offender registration

order statutes). We agree. Accordingly, we reverse the lifetime SBM order, and

reverse and remand the registration order for entry of an order requiring Defendant

to register as a sex offender for a period of thirty years.

 In North Carolina, a defendant convicted of an aggravated offense must enroll

in lifetime SBM. See N.C. Gen. Stat. § 14-208.40A(c). A defendant convicted of an

aggravated offense is also subject to mandatory lifetime sex offender registration.

N.C. Gen. Stat. § 14-208.23. However, an offender who has committed a reportable,

but non-aggravated, offense, and whose offense does not otherwise require lifetime

registration, is subject to mandatory registration order for a period of thirty years.

N.C. Gen. Stat. § 14-208.7(a).

 North Carolina law defines an aggravated offense as

 any criminal offense that includes either of the following:
 (i) engaging in a sexual act involving vaginal, anal, or oral
 penetration with a victim of any age through the use of
 force or threat of serious violence; or (ii) engaging in a
 sexual act involving the vaginal, anal, or oral penetration
 with a victim who is less than 12 years old.

N.C. Gen. Stat. § 14-208.6(1a). Thus, pursuant to G.S. § 14-208.6(1a), an aggravated

offense requires a sexual act involving an element of penetration.

 Here, Defendant was convicted of attempted second degree rape. A conviction

for attempted rape does not require penetration, and thus does not fall within the

 - 20 -
 STATE V. BARNETT

 Opinion of the Court

statutory definition of an aggravated offense. See State v. Davison, 201 N.C. App.

354, 364, 689 S.E.2d 510, 517 (2009) (when determining whether to impose satellite-

based monitoring, “the trial court is only to consider the elements of the offense of

which a defendant was convicted and is not to consider the underlying factual

scenario giving rise to the conviction.”). The trial court erred in its finding to the

contrary. See id., 201 N.C. App. at 362, 689 S.E.2d at 515 ("[W]hile a completed first-

degree sexual offense would be an aggravated offense, an attempted first-degree

sexual offense is not an aggravated offense."). Because the trial court’s imposition of

lifetime SBM was based solely on the trial court’s finding that attempted second

degree rape is an aggravated offense, we must reverse the order requiring lifetime

SBM.

 Similarly, the trial court’s order requiring Defendant register as a sex offender

for his lifetime was based only on its finding that attempted second degree rape is an

aggravated offense. As noted, because attempted second degree rape is a non-

aggravated offense, we must also reverse the registration order. However, because

attempted second degree rape constitutes a sexually violent offense, it is a reportable

conviction. See N.C. Gen. Stat. §§ 14-208.6(4)(a), 14-208.6(5). Therefore, on remand,

the trial court should enter a registration order requiring Defendant to register as a

sex offender for a period of thirty years. See N.C. Gen. Stat. § 14-208.7.

B. Permanent No Contact Order

 - 21 -
 STATE V. BARNETT

 Opinion of the Court

 Finally, Defendant argues that the trial court erred when it entered a

permanent no contact order preventing Defendant from contacting not only Ms.

Johnson, the victim of the crime, but also her three children. The trial court’s order,

according to Defendant, unlawfully subjects him to potential “criminal prosecution

for having contact with individuals who were not victims of the sex offense of which

he was convicted.” The State argues that extending the no contact order to the

victim’s children is permissible under N.C. Gen. Stat. § 15A-1340.50(f), which

provides that when granting a permanent no contact order in sex offense cases, a

court may, inter alia, “[o]rder other relief deemed necessary and appropriate by the

court.” N.C. Gen. Stat. § 15A-1340.50(f)(7).

 Under N.C. Gen. Stat. § 15A-1340.50, “[w]hen sentencing a defendant

convicted of a sex offense, the judge, at the request of the district attorney, shall

determine whether to issue a permanent no contact order.” N.C. Gen. Stat. § 15A-

1340.50(b). Following a “show cause” hearing, “the judge shall enter a finding for or

against the defendant. If the judge determines that reasonable grounds exist for the

victim to fear any future contact with the defendant, the judge shall issue the

permanent no contact order. N.C. Gen. Stat. § 15A-1340.50(e). In making its

determination, the court must “enter written findings of fact and the grounds on

which the permanent no contact order is issued.” Id. Having concluded a permanent

no contact order is warranted, a court may award several forms of relief enumerated

 - 22 -
 STATE V. BARNETT

 Opinion of the Court

in the statute, including “other relief deemed necessary and appropriate by the court.”

N.C. Gen. Stat. § 15A-1340.50(f)(7).

 Whether a trial court may extend a permanent no contact order under N.C.

Gen. Stat. § 15A-1340.50 (i.e., in the context of convicted sexual offenders specifically)

beyond the individual victim appears to be a matter of first impression. In State v.

Hunt, 221 N.C. App. 48, 56, 727 S.E.2d 584, 590 (2012), this Court held that, like

satellite-based monitoring, permanent no contact orders issued in sexual offense

cases constitute a civil, nonpunitive means of “protect[ing] society from recidivists.”

Dicta in Hunt suggests that this Court understood section 15A-1340.50 as applying

only to the specific victim in a given case and not to a broader group of people:

 [N.C. Gen. Stat. § 15A-1340.50] only protects one citizen
 from the threat posed by recidivist tendencies, as opposed
 to all citizens of our state . . . [I]t offers protection to one
 who has already been victimized and is still in fear of the
 defendant as opposed to protecting the general population
 against a more unspecified threat. . . . Again, N.C. Gen.
 Stat. § 15A-1340.50 is specifically intended to protect a
 victim from sex offenders who quite frequently repeat the
 unlawful conduct.

Id. at 56, 727 S.E.2d at 590-91 (emphasis added). Section 15A-1340.50 addresses

permanent no contact orders vis-à-vis the defendant and the victim only. A “victim”

is “[t]he person against whom the sex offense was committed.” N.C. Gen. Stat. § 15A-

1340.50(a)(3).

 - 23 -
 STATE V. BARNETT

 Opinion of the Court

 The trial court here imposed a permanent no contact order against Defendant,

providing: “This order includes the following individuals,” naming the victim’s three

children, as an “[a]dditional necessary and appropriate restriction.” The State argues

that the trial court had discretion to extend the no contact order to the victim’s

children based on Defendant’s familiarity with the children and because the children

all live with the victim, the sexual offense occurred in their home, and Defendant sent

a letter to one of the children threatening to harm their mother. We disagree, because

the plain language of the statute limits the trial court’s authority to enter a no contact

order protecting anyone other than the victim.

 As this Court observed in Hunt, N.C. Gen. Stat. § 15A-1340.50 unambiguously

protects a particular victim of a sexual offense. It follows that a court’s discretion to

expand the reach of a no contact order under this section must be supported by

potential risks to the victim, whether direct or indirect, but the order itself is directed

only to the victim. N.C. Gen. Stat. §15A-1340.50 consistently and repeatedly refers

only to “the victim” and not to any other person.

 State v. Elder, 368 N.C. 70, 773 S.E.2d 51 (2015), is instructive in our

interpretation of this statute. In Elder, 268 N.C. at 72, 773 S.E.2d at 53, our Supreme

Court considered the scope of relief that the trial court may include in a domestic

violence protective order (“DVPO”) under the “catch-all” provision in N.C. Gen. Stat.

§ 50B-3(a)(13), which states that a protective order may “[i]nclude any additional

 - 24 -
 STATE V. BARNETT

 Opinion of the Court

prohibitions or requirements the court deems necessary to protect any party or any

minor child.” N.C. Gen. Stat. § 50B-3(a)(13). The Elder Court held that the word

“any” did not authorize the trial court “to order law enforcement to search a

defendant's person, vehicle, or residence under a DVPO.” Elder, 368 N.C. at 72, 773

S.E.2d at 53. The Court explained that the “catch-all” provision was the last in a list

of 12 other provisions which the trial court may include in the DVPO and must be

interpreted consistently with the other items in the list:

 The word “any” in the catch-all provision modifies
 “additional prohibitions or requirements,” N.C.G.S. § 50B–
 3(a)(13), and this provision follows a list of twelve other
 prohibitions or requirements that the judge may impose on
 a party to a DVPO, id. § 50B–3(a)(1)–(12). For example,
 the court may prohibit a party from harassing the other
 party or from purchasing a firearm, and it may require a
 party to provide housing for his or her spouse and children,
 to pay spousal and child support, or to complete an abuser
 treatment program. Id. § 50B–3(a)(3), (6), (7), (9), (11),
 (12). It follows, then, that the catch-all provision limits the
 court to ordering a party to act or refrain from acting; the
 provision does not authorize the court to order law
 enforcement, which is not a party to the civil DVPO, to
 proactively search defendant's person, vehicle, or
 residence.

Id.

 In a fashion similar to the statute providing for a DVPO, N.C. Gen. Stat. § 15A-

1340.50 lists seven prohibitions which the court may include in a permanent no

contact order in sex offenses cases. It may:

 (1) Order the defendant not to threaten, visit, assault,

 - 25 -
 STATE V. BARNETT

 Opinion of the Court

 molest, or otherwise interfere with the victim.

 (2) Order the defendant not to follow the victim, including
 at the victim's workplace.

 (3) Order the defendant not to harass the victim.

 (4) Order the defendant not to abuse or injure the victim.

 (5) Order the defendant not to contact the victim by
 telephone, written communication, or electronic means.

 (6) Order the defendant to refrain from entering or
 remaining present at the victim's residence, school, place of
 employment, or other specified places at times when the
 victim is present.

 (7) Order other relief deemed necessary and appropriate by
 the court.

N.C. Gen. Stat. § 15A-1340.50 (emphases added).

 Reading 15A-1340.50(f) in the same manner as our Supreme Court construed

a similar statute in Elder, we cannot adopt the broad reading urged by the State. The

statute consistently addresses prohibitions of certain actions by the defendant

against the victim and not against any other persons.

 This reading of the statute may not necessarily mean that a defendant’s action

must be physically or literally directed to “the victim” to fall under the prohibitions

of a no contact order protecting just the victim. For example, a defendant could

“harass the victim” by indirect contact through her family members or even her close

friends, since

 - 26 -
 STATE V. BARNETT

 Opinion of the Court

 [h]arassment is defined as “knowing conduct ... directed at
 a specific person that torments, terrorizes, or terrifies that
 person and that serves no legitimate purpose.” N.C. Gen.
 Stat. § 14–277.3 (2005). The plain language of the statute
 requires the trial court to apply only a subjective test to
 determine if the aggrieved party was in actual fear; no
 inquiry is made as to whether such fear was objectively
 reasonable under the circumstances.

Wornstaff v. Wornstaff, 179 N.C. App. 516, 518-19, 634 S.E.2d 567, 569 (2006).

 In fact, this Court has held that contacting a victim’s family members may

constitute an indirect means of communicating with a victim in violation of a DVPO

under Chapter 50B. In Marshall v. Marshall, __ N.C. App. __, __, 757 S.E.2d 319,

326 (2014), a defendant contended that a DVPO “only barred him from contacting or

harassing [the victim] herself such that his admitted contact with [the victim’s]

friends, family, and associates was not a violation of the DVPO.” This Court rejected

that argument, observing that “the plain language of the DVPO bar[red] Defendant

from abusing or harassing [the victim] ‘by telephone, visiting the home or workplace

or other means[.]’” Id. (emphasis in original). The trial court made numerous findings

of fact that the defendant harassed the victim’s parents, children, other family

members, and friends, and concluded “these communications were indirect contacts

with [the victim] specifically barred by the DVPO.” Id.

 We need not speculate all the ways in which a defendant might violate a no

contact order issued under N.C. Gen. Stat. § 15A-1340.50, and if we did, we would

probably fail to imagine the ingenuity of future defendants. The authority of the trial

 - 27 -
 STATE V. BARNETT

 Opinion of the Court

court to enter an order under the statute is limited to prohibiting actions by the

defendant against “the victim” based on the plain language of the statute.

Accordingly, the trial court did not have authority under the catch-all provision to

enter a no contact order specifically including persons who were not “victims” of the

“sex offense” committed by Defendant, see N.C. Gen. Stat. § 15A-1340.50(a)(2) and

(3), and that portion of the no contact order identifying the victim’s children must be

vacated.

 Conclusion

 Based on the foregoing reasons, we conclude that Defendant received a trial

free of error. However, we reverse the trial court’s lifetime SBM order, reverse and

remand the lifetime sex offender registration order for entry of a new order requiring

registration for a period of thirty years, and we vacate and remand the permanent no

contact order so the trial court may remove mention of any individuals other than the

victim.

NO ERROR IN TRIAL; SBM ORDER REVERSED; REGISTRATION ORDER
REVERSED AND REMANDED; PERMANENT NO CONTACT ORDER VACATED
AND REMANDED.

 Judges CALABRIA and STROUD concur.

 - 28 -